[File No. 6640.]

REGIONAL AGRICULTURAL CREDIT CORPORATION OF MINNEAPOLIS, a Corporation of Minneapolis, Minnesota, Appellant, v. JOHN R. STEWART, A. A. Stewart and Phoebe Stewart, Respondents.

(289 N. W. 801.)

Opinion filed January 16, 1940.

*O'Hare, Cox & Cox,* for appellant.

*F. E. McCurdy,* for respondents.

BURR, J. The plaintiff is a Federal corporation organized under the provisions of the Emergency Relief and Construction Act of the Congress of the United States and sues to recover on a promissory note executed and delivered by the defendants to the plaintiff and secured by a chattel mortgage.

The main, if not the only, defense is that prior to and at the time of the foreclosure of the chattel mortgage an agreement was entered into between counsel for plaintiff and the defendants that if the latter would consent to the sale, assist in, and co-operate in the same, "the plaintiff would accept the proceeds of sale in full of the debt evidenced by said note. . . ." The defendants aided and assisted and co-operated in the sale, the sale was had, the full proceeds turned over to the plaintiff, and defendants claim the debt was satisfied in full.

The jury found for the defendants, and plaintiff, at proper time and place, made appropriate motions for dismissal of the action, for directed verdict, for judgment notwithstanding the verdict or for a new trial, all of which were denied, and the plaintiff appeals.

The controlling specifications of error center around failure of the court to grant the motion for directed verdict and the motion for judgment notwithstanding the verdict. They are based upon alleged total lack of evidence to show any power and authority on the part of coun-

sel to make any agreement of compromise or any waiver of deficiency judgment that would be binding upon the plaintiff.

With but one exception, there is no dispute in the evidence. A. A. Stewart or Angus Stewart and Phoebe Stewart are husband and wife, and John Stewart is the brother of the former. Because of sheer financial inability the defendants did not pay the note and it was permitted to run for several years. In the fall of 1938 the mortgage was delivered to plaintiff's counsel for foreclosure. A conference was had between one of the counsel and A. A. Stewart relative to the proceedings. It was recognized the defendants could not pay, and it is the claim of the defendants that then and there it was agreed the mortgage should be foreclosed, the defendants do all in their power to gather the property together, have it at the appointed place, assist in the sale, cut down the costs and expenses as far as possible, all the proceeds delivered to the plaintiff, and upon the completion of the sale the notes would be cancelled and delivered up. In the main this is admitted by the plaintiff, except the agreement to cancel and surrender the notes. Written stipulations were drawn and sent to the defendants for signature. At a second conference at which both brothers were present the stipulations were presented, signed by Phoebe Stewart. The defendants asked for as late a setting of the date of sale as possible to see if they could raise money to buy some of the property at the time of sale, and counsel stipulated as late a date as was requested.

It is admitted that at this conference counsel for plaintiff told both brothers he had no authority to cancel and surrender the notes upon the completion of the sale nor to waive any deficiency judgment. Knowing this, and after some hesitation, the brothers signed the stipulations, the property was collected and delivered to plaintiff, the sale was had, report duly made and filed, and suit commenced for the deficiency.

The issue raised by the disputed item of fact having been presented to the jury, and the jury having found for the defendants, we will assume that the version of the agreement in the first conference, as set forth by the defendant, A. A. Stewart, is correct, and we are required to determine whether the agreement is binding on the plaintiff, the record showing that such act was not authorized by

plaintiff nor any knowledge thereof communicated to the officers of plaintiff until the answer herein was served.

It is not out of place to state here that it is refreshing to observe the candor and genuine honesty of the defendants in their testimony. Without hesitation and without dispute they honestly and fairly related what plaintiff's counsel stated at the second conference regarding his lack of authority to make settlement or to waive any deficiency judgment. When men swear to their own hurt and change not, it strengthens confidence in human nature.

The defendants insist, however, that at the beginning of the foreclosure proceedings such agreement was made, they relied thereon, they assisted and co-operated in every way, gathered together and delivered the property; that they were ignorant of the power of counsel at that time; that plaintiff accepted the benefits of their actions and retained the proceeds, the property being scattered beyond recovery. It must be noted, however, that before anything was done under this agreement they knew that counsel could not and would not agree on behalf of the plaintiff to accept the proceeds in full settlement or deliver the note upon the completion of the sale.

The trial court was requested to take judicial notice, under the provisions of chapter 196 of the Session Laws of 1937, of the "laws and the statutes of the United States, Governing the Regional Agricultural Credit Corporation . . . ," and at the same time were tendered for the information of the court Exhibits 1, 2, and 3, showing the rules and regulations made for the control of the plaintiff. Under the provisions of §§ 3 and 5 of said chapter 196 the determination of such laws is a matter for the trial court and is reviewable.

But, independent of such statute, the courts of this state will take judicial notice of the laws of the United States creating such Federal agencies and instrumentalities in any case in which such instrumentality is involved, including the authority conferred upon such instrumentality by the law and the official rules and regulations of such instrumentality made in conformity with the law when duly promulgated.

The second paragraph of article 6 of the Constitution of the United States provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof, . . . shall be

the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

Section 3 of our own Constitution states: "The state of North Dakota is an inseparable part of the American Union, and the Constitution of the United States is the supreme law of the land."

Therefore, whenever an agency or instrumentality of the United States is lawfully operating in this state under a law of Congress, the court takes judicial notice of the law itself and its scope. Under such a view the courts have taken judicial notice of the act of Congress under which the Boy Scouts of America was organized (Young v. Boy Scouts of America, 9 Cal. App. (2d) 760), 51 P. (2d) 191; the terms of the Home Owners' Loan Act of 1933 (Theron Ford Co. v. Home Owners' Loan Corp. 120 Conn. 250, 180 A. 448); the law of Congress granting pensions to Spanish War veterans (Taggart v. Keebler, 198 Ind. 633, 154 N. E. 485); the law creating the United States Shipping Board Emergency Fleet Corporation (Armand Schmoll v. United States & A. S. S. Co. 128 Misc. 345, 217 N. Y. S. 883). As early as Parsons v. Venzke, 4 N. D. 452, 462, 61 N. W. 1036, 50 Am. St. Rep. 669, we held it to be our duty to take judicial notice of the rules and regulations of the land department. The text in 20 Am. Jur. 56, Evidence, § 30, with a long list of cases in footnote 13, and the text in 23 C. J. 128, with cases in footnote 89, furnish ample authority for this holding.

By chap. 7, 12 U. S. C. A., the Congress of the United States established by law, 48 Stat. at L. 51, chap. 25 et seq., a comprehensive system known as the "Farm Credit Administration" Act, which system includes the organization of Regional Agricultural Credit Corporations (subchapter 8 of chap. 7, 12 U. S. C. A.). By the provisions of § 1148 (in subchapter 8 of said chapter 7, 12 U. S. C. A.) these Regional Agricultural Credit Corporations "shall be managed by officers and agents to be appointed by the Farm Credit Administration under such rules and regulations as it may prescribe."

By the provisions of § 636, "The Governor of the Farm Credit Administration is authorized, in carrying out the powers and duties now or hereafter vested in him or the Farm Credit Administration by law or under any Executive order . . . to fix the powers and

duties of, such divisions, agencies, corporations, and instrumentalities as he may deem necessary to the efficient functioning of the Farm Credit Administration and the successful execution of the powers and duties so vested in the Governor and the Farm Credit Administration.  .  .  ."

The Farm Credit Administration from time to time adopted rules and regulations with reference to offers of settlement in litigated cases.

These exhibits tendered the trial court show that the Farm Credit Administration, in conformity with the power conferred upon it by Federal statute, adopted and promulgated this regulation:

"In the settlement of litigated cases in which a regional agricultural credit corporation is an interested party, the following regulations should be observed:

"All offers of settlement in such litigated cases must be submitted, together with the recommendation of the corporation's executive or loan committee, its management, and its attorney, to the Washington office except in any case wherein the amount offered is less than $500.00 and in connection with which the corporation's executive or loan committee, its management, and its attorney consider the offer unreasonable and unacceptable.  In such cases the corporation may reject the offer made, without prior reference to the Washington office, provided that in connection with the rejection of such settlement the attorney for the corporation shall immediately advise the Washington office of the rejection and the reasons therefor."

That corporations of the character of the plaintiff are Federal agencies and instrumentalities of the United States is not and cannot be disputed.  Their status has been established by many decisions of the United States Supreme Court so that in the case cited by plaintiff—Keifer v. Reconstruction Finance Corporation, 306 U. S. 381, 83 L. ed. 784, 59 S. Ct. 516—it is taken for granted and the status assumed.

All persons dealing with such an instrumentality as the plaintiff are presumed to know the law under which it is organized and governed, the power and authority conferred by statute, and such rules and regulations as are made in conformity with the provisions of the statute.

It is clear the defendants were, as a matter of fact, ignorant of the extent of these rules and regulations and in good faith assumed settlement could be made by counsel; but no rule is better established than the rule with reference to the knowledge of the law. This rule is well set forth in 20 Am. Jur. 208, Evidence, § 210, where we find:

"It is a maxim that all persons are conclusively presumed to know the law of the land. . . . This well-known principle is founded upon policy as well as necessity. . . .

"Ignorance of the law will in no event excuse or relieve one . . . from the legal effect of his contract obligations. A party to a transaction must be conclusively presumed to have known the relevant law. . . ."

This statement is so well supported by the cases cited that it is not necessary to quote from any of them.

Defendants urge strongly that under the law of the state the regularly appointed attorney for a party has certain powers in the case in which he is employed; that, in ignorance of anything to the contrary, the defendants had a right to rely upon the relationship between plaintiff and counsel; that benefits accrued to the plaintiff to the detriment of the defendants because of this agreement; that the plaintiff has retained the benefits and therefore is estopped from asserting anything to the contrary.

It is not necessary for us to outline the scope and authority of counsel who appear for either party in the trial of a lawsuit. The Federal statute, with the rules and regulations made in conformity therewith, controls here. The counsel is but the agent or attorney for the parties, with certain defined powers and with a wide range of authority; but the Federal statute restricts this power and authority in cases where the law involved controls. Hence, we need not discuss the state statutory powers conferred upon attorneys in general. According to the record both counsel and the defendants acted in good faith throughout the entire proceedings. Nevertheless, the defendants are bound to know what the law is, and, knowing this, they are conclusively presumed to know, so far as this action is concerned, that counsel had no authority at any time to make any such agreement alleged. This being so, it is immaterial what was the finding of the jury in regard to the sole question of fact in dispute. Even if the

finding be sustained by the evidence, it is clear it was not binding upon the plaintiff. The officers of plaintiff corporation knew nothing about such agreement until the answer was served and never ratified it—in fact, could not ratify. That right belonged to the Farm Credit Administration. Therefore, the plaintiff was not estopped from taking a deficiency judgment.

The motion for judgment notwithstanding the verdict should have been granted, there being no dispute as to the amount due. The appeal is sustained and judgment ordered for the plaintiff for the amount demanded in the complaint.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.