ROBINSON **v.** STATE.

No. 7376.

Supreme Court of North Dakota.

April 2, 1954.

Rehearing Denied April 21, 1954.

522

Francis Murphy, Fargo, for appellant.

Paul M. Sand, Asst. Atty. Gen., Bismarck, for respondent.

BURKE, Judge.

By this action plaintiff seeks to enforce a contract alleged to have been made by his attorney with the Assistant Attorney General representing the defendant, in connection with the settlement of a suit brought by the plaintiff against a third party tort feasor.

In May 1939, plaintiff suffered an injury in the course of an insured employment. As a result of the injury he suffered a permanent disability. He filed a claim with the North Dakota Workmen's Compensation Bureau. This claim was allowed and by June 19th, 1951, the Compensation Bureau had paid the plaintiff on account of medical and hospital expenses and temporary disability the sum of $4,767.84.

Some time prior to June 19th, 1951, plaintiff brought an action in the United States District Court for the District of Minnesota, in his own name and in the name of the Compensation Bureau, against three individuals and a corporation whose negligence he alleged was proximate cause of his injuries. The trial of this action was set to commence upon June 20th, 1951, at Winona, Minnesota. On June 19th, 1951, P. W. Lanier, Sr., one of the attorneys for the plaintiff in that action, entered into negotiations with the defendants therein, in attempt to reach a settlement. The negotiations had proceeded to a point where it became apparent that a substantial settlement could be made, when Mr. Lanier called the attorney for the Compensation Bureau by telephone to discuss the compromise settlement. He testified, in this case, that he told Mr. Sand, attorney for the Compensation Bureau, that he was satisfied he could settle the law suit at a figure which would be somewhere between $7,500 and $12,500 and that he would accept such a settlement if the Compensation Bureau would waive its right to subrogation to the extent of compensation already paid and

apply plaintiff's recovery solely against compensation to which the plaintiff would be entitled in the future. He testified that he also told Mr. Sand that if the Compensation Bureau accepted this proposal the plaintiff would pay all the attorneys' fees in the negligence action. According to Mr. Lanier's testimony Mr. Sand left the telephone for a minute or two, then returned and said, "That's satisfactory; go ahead and settle the case." Or as Mr. Lanier later stated: "The settlement is accepted; settle the case on that figure."

After speaking with Mr. Sand, Mr. Lanier called one of his partners, Mr. P. W. Lanier, Jr., for the purpose of having him secure the plaintiff's consent to the compromise settlement. That consent having been secured, Mr. Lanier settled the tort action for the sum of $9,750 and received a check in that amount payable to the plaintiff, his attorneys and the North Dakota Workmen's Compensation Bureau.

On June 22nd, 1951, Mr. P. W. Lanier, Jr., forwarded this check to the Compensation Bureau with a letter in which he said:

"In accordance with the understanding had between the Bureau and P. W. Lanier, Sr. of this firm, I am submitting herewith final statement as to the present accounting and understanding between Ray Robinson and the Bureau:

"1. Our records show that the Bureau has expended the amount of $4,767.84. That amount is to be written off by the Bureau and not charged against the account of Ray M. Robinson.

"2. Full and final settlement with defendants $9,750.00
Expenses 105.57

Balance $9,644.43
Attorneys' fees, Lanier & Lanier 3,214.81

Balance to Ray Robinson $6,429.62

"It is the understanding had between Ray Robinson and the Bureau that the

$6,429.62 will be applied on future payments due him by the Workmen's Compensation Bureau and until such payments exceed said sum of $6,429.62 the Bureau shall be be relieved of paying."

To this letter, Mr. Sand, attorney for the Compensation Bureau replied upon July 2, 1951. In this reply he stated:

"At the request of the Commissioners, I am herewith returning draft No. O–28315– not indorsed. The Bureau wishes you to secure the endorsement of Lanier attorneys and Ray M. Robinson, and return the draft to the Bureau. Upon receipt of the endorsed draft, the Bureau will promptly issue checks to the attorney as set forth in your letter of June 22nd, and will deduct the amount expended by the Bureau and issue a check for the Balance to Ray M. Robinson."

While this letter does not directly deny the existence of the agreement as asserted in Mr. Lanier's letter of June 22nd, it implies either a denial or a repudiation of such an agreement. Thereafter, in August, 1951, after many conferences between Mr. Lanier, Sr., Mr. Sand, Mr. Robinson and the Workmen's Compensation Commissioners a temporary arrangement for the disbursement of the proceeds of the check was made with the understanding that plaintiff was to bring suit for the balance claimed to be due him according to his alleged contract.

Accordingly this action was instituted. Plaintiff in his complaint demanded judgment for a balance of $3,178.51. In its answer the defendant denied that its attorney had entered into the alleged agreement, denied that the Workmen's Compensation Commissioners had ever approved such an agreement and alleged that the attorney for the Bureau was without power to compromise any of the rights of the Bureau without such approval. The case went to trial upon these two issues. Mr. Sand testified that his long distance telephone conversation with Mr. Lanier in Winona related primarily to an approval of Mr.

Lanier's contract for attorney's fees and that subrogation was not mentioned. Two of the Workmen's Compensation Commissioners testified that they had never given their approval to any agreement affecting subrogation.

The trial court made no finding as to the existence of the agreement as averred by Mr. Lanier and as denied by Mr. Sand. It found that Mr. Sand as attorney for the Bureau was without power to compromise his client's rights without the consent of his client and ordered judgment for the dismissal of the action. Plaintiff has appealed from the judgment which was entered pursuant to this order and has demanded a trial anew in this court.

In view of the decision of the trial court we shall direct our attention, first, to the issue raised as to the power of an assistant attorney general as attorney for the Workmen's Compensation Bureau. Has he the power to compromise a substantial right of the Bureau, without securing the consent of the Workmen's Compensation Commissioners?

The right involved in this case is the Bureau's right to subrogation under Section 65–0109, NDRC 1949 Supp. which provides:

"When an injury or death for which compensation is payable under the provisions of this title shall have been sustained under circumstances creating in some person other than the fund a legal liability to pay damages in respect thereto, the injured employee, or his dependents may claim compensation under this title and obtain damages from, and proceed at law to recover damages against, such other person. If compensation is claimed and awarded under this title, the fund shall be subrogated pro tanto to the rights of the injured employee or his dependents to the extent of the amount of the compensation paid. * * *"

In the instant case, as has been pointed out, the Bureau had expended $4,767.84 upon this claim. The agreement

for which plaintiff contends would include a waiver of the right of subrogation to this amount. Subsequent payments and awards up to the present time by the Bureau upon this claim amount to $2,338.38. Thus by the alleged agreement the Bureau would have compromised a right to subrogation in the amount of $7,106.12 for $2,338.38, in so far as the liability so far established shows. This is not conclusive as the plaintiff may be entitled to additional awards in the future.

Section 65–0201, NDRC 1943 provides:

"The North Dakota workmen's compensation bureau shall be maintained for the administration of the provisions of this title. Such bureau shall consist of three workmen's compensation commissioners who shall be appointed by the governor. * * *"

Section 65–0112, NDRC 1943 provides:

"Upon the request of the bureau, the attorney general shall institute and prosecute the necessary actions or proceedings for the enforcement of any of the provisions of this title or for the recovery of any money due the fund or of any penalty provided for in this title, and shall defend all suits, actions, or proceedings brought against the bureau or any member thereof in his official capacity. * * *"

A consideration of these two statutes reveals that the entire executive control of the administration of the functions of the Bureau is vested in the Workmen's Compensation Commissioners, and that this executive control is extended to any litigation that the Bureau may have. The Attorney General is directed to institute or defend any action on behalf of the Bureau upon the request of the Bureau. He may not take such action upon his own initiative. By statute, in so far as his representation of the Bureau is concerned, his role is that of the attorney only. He may advise but the power of control of litigation is vested in the Bureau. In view of these statutes we have reached the conclusion that the relationship of the Attorney General and the Workmen's Compensation Bureau with respect to litigation in which the Bureau is involved is no more or less than the ordinary relationship of attorney and client and that it should be governed by the rules which govern that relationship.

Ordinarily an attorney employed to represent a client with respect to litigation has no power to compromise the rights of his client. 7 C.J.S., Attorney and Client, § 105, page 928. He may not waive or surrender any substantial rights of his client without his consent. 5 Am.Jur., Attorneys at Law, § 70, p. 300. See also, Regional Agricultural Credit Corporation of Minneapolis v. Stewart, 69 N.D. 694, 289 N.W. 801; Business Service Collection Bureau v. Yegen, 67 N.D. 51, 269 N.W. 46; Mongeon v. Burkebile, N.D., 55 N.W.2d 445.

Plaintiff in this case, however, contends that if the relationship of the Bureau and the Attorney General was simply that of attorney and client, the rule that an attorney has power in an emergency to compromise a client's claim, applies. We can see no emergency here. Mr. Sand, the Assistant Attorney General, who represented the Bureau occupies offices in the same suite as the Compensation Commissioners. The Commissioners were available for consultation at all times. Their consent or refusal to consent to the compromise could have been speedily obtained.

We hold therefore that the Assistant Attorney General, representing the Bureau in the third party action was without power to compromise or surrender any of the rights of the Bureau in that action without the Bureau's consent.

The judgment of the District Court is therefore affirmed.

MORRIS, C. J., and SATHRE and GRIMSON, JJ., concur.