AUSTIN FARM CENTER,
INC., Appellant,

v.

AUSTIN GRAIN CO., Huntting Elevator
Co., Respondents,

and

AUSTIN GRAIN CO.,
Third–Party Plaintiff,

v.

Lester WARD, et al.,
Third–Party Defendants,

and

AUSTIN FARM CENTER,
INC., Appellant,

v.

Lester H. WARD, et al., Respondents.

No. C2–87–1464.

Court of Appeals of Minnesota.

Jan. 12, 1988.

Lee W. Mosher, Golden Valley, for Austin Farm Center, Inc.

Gerald S. Weinrich, Austin, for respondent Austin Grain Co.

Scott Richardson, Austin, for respondent Huntting Elevator Co.

David A. Joerg, Preston, for Lester Ward, et al.

Considered and decided by CRIPPEN, P.J., and FOLEY and LANSING, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

The questions presented in this case are (1) whether the parties entered into a valid settlement when the creditor proposed settlement, received settlement documents, delayed acting for several months, and cashed the settlement check; and if so, (2) whether this settlement also extinguishes the creditor's security interest obtained on a third party's property. The trial court granted summary judgment against the creditor on both questions, and we affirm.

## FACTS

Appellant Austin Farm Center, Inc. sued respondents Lester and Ruby Ward for an allegedly unpaid debt. Appellant's claim involved an open account for the sale of farm chemicals and fertilizers between May 1983 and August 1984, with a balance of $46,829.94 and finance charges of $8,371.12. The items were sold to W & H Farms, which was the business of Lester Ward and Gary and Margaret Harrison.

In May 1984, when sales to W & H Farms, less payments made on the account, totaled $36,634.59, Lester Ward and Gary and Margaret Harrison gave a security interest to appellant for certain 1984 crops. On the same day, the Wards gave appellant a mortgage on their vendors' interest in a tract of land.

In May 1985, appellant brought its original suit against the Wards (Gary Harrison had filed for bankruptcy), alleging that they had not made monthly payments on their debt. In the complaint, appellant asked for payment of $55,201.06, to be obtained by sale of the mortgaged real estate and the secured crops. Ruby Ward filed a counterclaim, alleging abuse of process and defamation because appellant brought suit against her although she had nothing to do with the farming operation since the Wards separated in 1958.

Lester Ward and Gary Harrison later sold the encumbered grain to respondents Austin Grain and Huntting Elevator. In July 1986, appellant sued the grain buyers in tort for wrongful conversion, and sought as relief the value of the grain: $29,170.80 from Austin Grain and $12,230.19 from Huntting. Both grain buyers brought third party actions against Lester Ward

and Gary Harrison, seeking indemnity for any liability which might be found on the buyers. By agreement of all parties the actions were consolidated.

The Wards moved for summary judgment on the ground that the claim against them was settled. Earlier, after a number of conferences between counsel for both sides, appellant's attorney, Sween, had informed the Wards' attorney, Joerg, that the claims between the parties were settled for $5,402.83 to be paid to appellant by the Wards. Joerg then wrote to Sween on January 30, 1986, enclosing "the customary documents in settlement of the case," and also a check payable to Sween and plaintiff in the agreed-upon amount. When, by February 11, 1986, Joerg had received no response to his letter, he again wrote Sween, inquiring why the stipulations in settlement had not been returned. That letter was not answered. On March 27, 1986, he again wrote to Sween, again reminding him of the January 30th letter and check, and stating that he had received no response to either of the letters. He again requested that Sween return the "settlement documents."

On April 29, 1986, Sween responded to Joerg, acknowledging his receipt of the settlement papers and the check in January and stated:

We have deposited that amount in our trust account pending approval by Austin Farm Center, Inc. of my going ahead and executing the settlement with the Wards. They are presently having their attorney in the Cities review this matter and hopefully we can bring this matter to an end in the near future. At the present time I have not yet received the okay to sign the Stipulation of Dismissal. Hopefully that can be done in the near future.

The next correspondence in the matter was notice of substitution of attorney James H. Russell of Minneapolis for Sween, dated May 12, 1986.

In November 1986, the Wards made their summary judgment motion. On December 2, attorney Paul Sween stated in an affidavit in relevant part:

2. That David Joerg prepared settlement documents providing for settlement of the claims of Plaintiff against Lester and Ruby Ward and Gary Harrison, and sent them to your affiant along with a check for $5,402.83, intended as a settlement amount. That said settlement documents were sent to affiant after various telephone conferences with David Joerg and David Baugh, the manager of Austin Farm Center, Inc., relative to settlement of the controversies by and between Austin Farm Center, Inc. and Lester and Ruby Ward and Gary Harrison. That affiant believed that through his conversation with David Joerg and David Baugh that a settlement of the dispute had been arrived at.

Sween also acknowledges that he deposited the check in his trust account and it was duly honored.

Appellants argued at the summary judgment hearing that an agreement must be in writing to be a final settlement, but the trial court decided to the contrary, granting summary judgment for the Wards. The court concluded that

[t]here was an agreement to resolve the differences between the parties and to conclude the litigation, it was done by the duly authorized representatives of each party under either express, implied, or apparent authority from the client, and the other party is now estopped to claim any position to the contrary.

After the Wards prevailed, Austin Grain and Huntting Elevator also moved for summary judgment on the ground that the settlement of the original debt extinguished appellant's security interest in the grain and consequently eliminated any claim against the grain buyers. The trial court granted summary judgment, finding that appellant had already received satisfaction for its claim against the Wards, and that the settlement released the Wards from their debt obligation. The debt was backed by a security agreement, for which the grain was collateral, and appellant could not now pursue the collateral after settling the original debt claim.

Austin Farm Center, Inc. appeals from both summary judgments.

## ISSUES

1. Did the trial court err in granting summary judgment to respondents Lester and Ruby Ward?

2. Did judgment for the Wards relieve respondents Austin Grain Company and Huntting Elevator Company from any liability to appellant?

## ANALYSIS

When reviewing an order of summary judgment, this court must examine the record to determine whether there are any material issues of fact, and whether the trial court erred in its application of the law. *Minneapolis, St. Paul and Sault Ste. Marie Railroad Co. v. St. Paul Mercur Indem. Co.*, 268 Minn. 390, 406, 129 N.W.2d 777, 788 (Minn.1964); *Campion v. Wright County*, 347 N.W.2d 289, 291 (Minn.Ct.App.1984).

1. Appellant claims it intended to preserve its claims against Huntting Elevator and Austin Grain, and expressed its intention to Ward's attorney, so there was no meeting of the minds as to any settlement. The most relevant evidence on this point is a statement in the settlement correspondence between the attorneys. In his first letter to appellant's attorney, Ward's attorney said:

> It is my understanding that you are going to proceed to recover from Huntting Elevator and Austin Grain the monies paid for the grain delivered by Harrison to them in which your client had a security interest.

The trial court did not address this contention. However, there is no evidence that the language reflects an actual expectation of a valid recovery claim against Austin Grain and Huntting Elevator. Nor was there any claim before the trial court or us that the parties believed such a claim could be successfully pursued. The letter suggests only that the parties did not intend to include Austin Grain and Huntting Elevator in the settlement agreement, and that appellant's attorney anticipated attempting a claim against the grain buyers. Appellant presented no other evidence at the summary judgment hearing compelling the conclusion that the claims were not settled. The only question remaining, therefore, is whether the Wards otherwise presented a showing of a valid settlement.

■ Minn.Stat. § 481.08 (1986) creates a simple rule of law binding a client to his or her attorney's act once the attorney has made an agreement "in writing and signed by such attorney," regardless of any showing of authority. But an agreement is not required to be in writing to bind the parties. *Ghostley v. Hetland* holds that a settlement agreement is not unenforceable for failure to comply with the statute:

> The statute provides a method for avoiding disputes as to settlement agreements, but it is not a condition to the validity of an otherwise provable agreement made by an attorney with the authorization of his client.

295 Minn. 376, 378, 204 N.W.2d 821, 823 (1973). If the agreement is not in writing, however, the attorney must have had authority to settle in order to bind the parties.

Whether an attorney has been given express authority to settle a claim is normally a question of fact to be resolved by the trial court. *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 438 (Minn.Ct.App.1985). Appellant argues that its attorney did not have authority to enter into a binding settlement agreement with the Wards and that the affidavit of David Baugh, President of Austin Farm Center, Inc. is conclusive evidence of that fact. In the affidavit, Baugh states that he never agreed "by word, sign or otherwise, to settle the case on the terms offered," and that he "never gave [his attorney] authority to settle the case on the terms offered, but rather notified him that the settlement was not acceptable." This affidavit was sworn on December 30, 1986, after summary judgment was granted, and was only offered in support of appellant's motion for a new trial and amended findings. Appellant argues in effect that this evidence was sufficient to counter the sum-

mary judgment motion, because the burden of proof in such a motion is on the movant, even though this evidence was not before the court at the summary judgment hearing.

In *Rosenberg*, Rosenberg's attorney was held to be authorized to settle his claim based on the following evidence:

a) The letters by the corporation's attorney mailed in September 1983 which indicated that a settlement had been reached;

b) The oral argument to the court by the corporation's attorney that he understood Rosenberg's attorney had the authority to settle the case;

c) The fact that Rosenberg had previously agreed to settle the case for the same amount; and

d) The absence of any action by Rosenberg for a year and a half repudiating the settlement.

*Rosenberg*, 376 N.W.2d at 437.

■ In this case, undisputed evidence showing a settlement consisted of:

a) The fact that Sween notified Joerg that the claims could be settled for the amount of $5,402.83;

b) the letter that Joerg wrote to Sween, consistent with their agreement, which enclosed the check for $5,402.83; a Stipulation of Settlement and of Dismissal in the case against the Wards; and Stipulation of Dismissal in the case against the Harrisons;

c) The fact that Sween received the letter and the check, and two reminder letters;

d) The fact that Sween cashed the check;

e) The fact that Sween on behalf of his client waited three months before responding, and that appellant never responded to the settlement offer before or after discharge of Sween;

f) The affidavit by Sween stating his understanding that the parties had agreed to a settlement.

The major differences here are that unlike Rosenberg, appellant did not expressly agree with the Wards to settle; rather appellant's attorney agreed with the Wards' attorney. Sween did not wait as long as a year and a half to repudiate the settlement; but Sween did cash the check, unlike in *Rosenberg*. The combined effect of this evidence is as compelling as in *Rosenberg*, and appellant presented no evidence to defeat this conclusion. There was sufficient undisputed evidence for the trial court here to adjudicate that Sween was authorized to settle.

■ Even if Sween did not have appellant's express authority to settle, under *Rosenberg*, the settlement could nevertheless have been binding. Oral settlements are recognized as binding without express authority under three other theories: implied authority, estoppel, and ratification. The agreement bound appellant if the settlement "contract" was formed from an offer and an acceptance, resulting in a meeting of the parties' minds. *Rosenberg*, 376 N.W.2d at 437. An acceptance must be an objective manifestation of assent, which can be in the form of conduct or even silence, when there is a duty otherwise to deny.

[W]here an obligor tenders a check as an offer of compromise, and the obligee retains it for an unreasonable length of time without indicating his refusal to accept it as an offer of compromise, his retention of the check constitutes an acceptance of the offer even if he does not cash the check or derive any benefit from it.

*Id.* (quoting 15A Am.Jur.2d, *Compromise and Settlement* § 8 (citations omitted)). In *Rosenberg*, where Rosenberg or his attorney retained the check for eighteen months without notifying the corporation that it would not be accepted as payment in full, Rosenberg had impliedly accepted the offer of settlement. *Rosenberg*, 376 N.W. 2d at 437.

■ In this case, appellant's attorney kept the check for three months, and cashed it, before responding at all; and when he eventually responded in his letter he stated that he had not yet received permission from appellant to sign the Stipulation of Dismissal, but gave no indication that appellant refused to sign. In his affi-

davit, appellant's attorney indicated his belief during the time he was retained that the parties agreed to the settlement. The only communication from appellant to the Wards after the response letter was the notice of substitution of counsel dated May 12, 1986. There is no evidence on the record that appellant or its substitute counsel informed the Wards of appellant's refusal to settle until the hearing on Wards' motion for summary judgment, at which appellant offered no evidence refuting the settlement.

For the doctrine of equitable estoppel to apply here, the Wards must show that appellant made representations or inducements upon which the Wards reasonably relied and which will cause them harm if estoppel is not applied. *Id.* at 437. In *Rosenberg*, the court found an equitable estoppel based on the settlement papers mailed from the defendant corporation to Rosenberg. Rosenberg was expected to sign them. His failure to respond or object to the terms of the settlement papers justified the trial court in finding the defendant corporation's expectation and reliance reasonable. *Id.* at 438.

Again, in this case the facts are essentially the same except that the settlement papers were not sent directly to appellant, but to its attorney. Under the facts described above, the Wards could reasonably have relied on the authority of appellant's attorney, creating a settlement by estoppel.

The trial court here stated that under *Rosenberg*, "implied acceptance or equitable estoppel" supports the Wards' position in light of the fact that appellant's attorney, on appellant's behalf, "accepted the money in settlement and did nothing with respect to denying the settlement posture of the case for three months thereafter." Under these undisputed facts, the trial court here could have adjudicated that appellant impliedly accepted the offer of settlement or accepted by estoppel.

2. Appellant contends that injustice would result if appellant is barred at this point from pursuing its claims against Huntting Elevator and Austin Grain, when the settlement agreement so clearly indicated that appellant was considering a claim against them. Appellant again refers to the Ward's attorney's letter stating his understanding that appellant intended to "proceed to recover from Huntting Elevator and Austin Grain the monies paid for the grain delivered by Harrison to them in which your client had a security interest."

As observed above, we do not believe the agreement incorporated or represented appellant's intention to preserve its claims against the grain buyers. It is not evident that appellant expected to recover from Austin Grain and Huntting.

The settlement operates to discharge any secondary liability of the grain buyers. This is analogous to instances of vicarious liability in that the liability of Austin Grain and Huntting Elevator for conversion is conditioned completely on proof that the plaintiff, appellant, has a valid claim against Ward, who stands in the position analogous to the primary tortfeasor. *See Hoffmann v. Wiltscheck*, 411 N.W.2d 923, 926 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Nov. 13, 1987) (tort victim's *Pierringer* release with agent, the primary tortfeasor, prevented victim from recovering from vicariously liable principal). Austin Grain and Huntting Elevator cannot be liable on a security interest for a debt that has been discharged.

### DECISION

The trial court correctly granted summary judgment to Lester and Ruby Ward, and Huntting Elevator and Austin Grain Company. Appellant impliedly accepted or ratified the settlement agreement with the Wards, so appellant's claim as to them was satisfied. Appellant's security interest on the grain was extinguished along with the primary debt, so Huntting Elevator and Austin Grain are not liable to appellant.

Affirmed.