**MIDWEST FEDERAL SAVINGS BANK, Plaintiff and Appellee,**

v.

**DICKINSON ECONO–STORAGE, a general partnership; Roger J. Pelton, Raymond Pelton and Duane U. Brekke, Defendants and Appellants.**

Civ. No. 890136.

Supreme Court of North Dakota.

Jan. 18, 1990.

Freed, Dynes, Reichert & Buresh, P.C., Dickinson, for defendants and appellants; argued by Eugene F. Buresh.

Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for plaintiff and appellee; argued by James D. Geyer.

GIERKE, Justice.

Appellants, Dickinson Econo–Storage, a general partnership consisting of Roger J. Pelton, Raymond Pelton and Duane U. Brekke (Econo–Storage), appeal from a summary judgment granted to Midwest Federal Savings Bank (Midwest Federal). We reverse and remand.

Econo–Storage was the fee owner of Lots 3 and 4, Block 2A, Kilweins 2nd Subdivision, Stark County, North Dakota.

Econo–Storage granted to Midwest Federal a mortgage on the western part of the aforementioned properties hereinafter described as the west 80 feet of lot 3. After Econo–Storage defaulted on the note and mortgage, Midwest Federal entered into possession of the west 80 feet of lot 3. The west 80 feet of lot 3 was separate from the remaining portion of lot 3 and from lot 4 and Econo–Storage had separate mortgages with different mortgagees on the remaining property of lots 3 and 4. However, the properties were not partitioned for tax purposes with the Treasurer of Stark County, North Dakota, and there were no arrangements made for the apportionment of taxes between the interests held by Econo–Storage and Midwest Federal.

In August of 1986, Midwest Federal paid Stark County $30,703.55 for delinquent real estate taxes for lots 3 and 4 for the years of 1983 through 1986. Subsequently, Midwest Federal learned that of that amount, $25,191.08 should have been apportioned to the remaining portions of lots 3 and 4 owned by Econo–Storage. Consequently, Midwest Federal commenced an action against Econo–Storage for the $25,191.09 that Midwest Federal mistakenly paid.

Prior to the scheduled trial date of January 24, 1989, counsel for Midwest Federal, James Geyer, and counsel for Econo–Storage, Robert Lamont, reached an oral settlement of the dispute. Econo–Storage was to pay Midwest Federal $18,500 over a period of time and upon default, to confess judgment for $23,000. This agreement was reduced to writing by Geyer and was sent to Lamont for the parties' signatures. However, on February 7, 1989, Lamont informed the court that a trial date needed to be rescheduled as the partners of Econo–Storage refused to execute the proposed agreement that he had negotiated on their behalf. Subsequently, Lamont withdrew from the case.

Thereafter, Midwest Federal moved for summary judgment contending that Lamont had the authority, whether ostensible or actual, to bind the partners of Econo–Storage to the negotiated settlement. The

district court granted Midwest Federal's motion for summary judgment holding that since there were no disputed facts as to the terms and conditions of the agreement reached between the parties' counsel, the relationship between Lamont and the partners was a valid principal/agent relationship in which Lamont had the authority to bind the partners to the agreement in which Midwest Federal acted in good faith. This appeal followed.

■ The sole issue to be decided on this appeal is whether Econo–Storage's attorney, Lamont, had sufficient authority to bind Econo–Storage to the settlement agreement he negotiated with Midwest Federal's attorney, Geyer.

Under Rule 56, N.D.R.Civ.P., a summary judgment should be granted if it appears that there are no genuine issues of material fact or any conflicting inferences which may be drawn from those facts. Rule 56(c), N.D.R.Civ.P.; *Miller Enterprises v. Dog N' Cat*, 447 N.W.2d 639, 642 (N.D. 1989) (citations omitted). The party moving for a summary judgment has the burden of demonstrating that there is no genuine issue of material fact. *Binstock v. Tschider*, 374 N.W.2d 81, 83 (N.D.1985).

In the instant case, Midwest Federal argues that Lamont had sufficient authority to bind Econo–Storage to the settlement agreement. Specifically, Midwest Federal argues that Lamont stated to a colleague of Geyer that he felt that he had authority to enter into the agreement on behalf of the Econo–Storage partnership and its partners. Further, Midwest Federal contends that a letter that Lamont wrote to the partners of Econo–Storage indicates that he entered the settlement negotiations believing that he had the authority to bind Econo–Storage to the settlement. The letter stated in pertinent part: "I have enclosed a copy of the Confession of Judgment and Stipulation and Agreement by attorney James D. Geyer which accurately reflects the settlement agreement which I approved on your behalf."

Econo–Storage responds that there was an actual dispute concerning whether or not Lamont had authority to enter into the settlement agreement. To support this position, Raymond Pelton, a partner of Econo–Storage, filed an affidavit which stated that "at no time was our former attorney of record, Robert Lamont, authorized to enter into a settlement agreement on our [Econo–Storage and its partners'] behalf under the terms and conditions as outlined in the proposed agreement."

■ We believe it seems clear that a material issue exists with regard to whether or not Lamont had the authority from his clients to enter into the settlement agreement. Therefore, we must decide whether such an issue is a legal issue or a factual issue so as to determine if the district court erred in granting summary judgment under these circumstances. Our research indicates that this Court has not addressed the question of whether the existence of an attorney's authority to bind a client to a settlement agreement involves a question of fact or a question of law.

After a review of legal precedent from other jurisdictions, it appears to be well settled that "whether an attorney has been given express authority to settle a claim is normally a question of fact to be resolved by the trial court." *Austin Farm Center v. Austin Grain Co.*, 418 N.W.2d 181, 184 (Minn.App.1988) [citing *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 438 (Minn.Ct.App.1985)]. *See also Demetracopoulos v. Strafford Guidance Center*, 130 N.H. 209, 536 A.2d 189, 192 (1987) (the existence of an attorney's authority is a question of fact); *Skalbeck v. Agristor Leasing*, 384 N.W.2d 209, 212 (Minn.App.1986) (whether an attorney has been given express authority to settle a claim is a question of fact); *Pipkin v. Lucas*, 451 So.2d 346, 347 (Ala.Civ.App. 1984) (whether an attorney is authorized to bind his client is a question of fact to be determined by the factfinder); *Johnson v. Tesky*, 57 Or.App. 133, 643 P.2d 1344, 1347 (1982) (as trier of fact, trial court properly determined whether plaintiff had given her attorneys authorization to settle her claim); *Norberg v. Fitzgerald*, 122 N.H. 1080, 453 A.2d 1301, 1303 (1982) (whether an attor-

ney has the authority to bind client to settlement agreement is a question of fact).

We agree with the rationale of the above cited cases that the determination of Lamont's authority to bind Econo–Storage to the settlement agreement involved a question of fact and, therefore, we find that summary judgment was erroneously granted by the district court. Accordingly, we reverse the district court's summary judgment and remand for further proceedings consistent with this opinion. However, notwithstanding the aforementioned grounds for reversing the district court's summary judgment, we find it necessary to briefly discuss the current state of law regarding the scope of an attorney's authority to settle or compromise his or her client's claim or cause of action.

This Court has held in the past that ordinarily an attorney employed to represent a client with respect to litigation has no power to compromise the rights of his client. *Robinson v. State*, 63 N.W.2d 521, 524 (N.D.1954). In *Loraas v. Connolly*, 131 N.W.2d 581, 584 (N.D.1964), this Court recognized that in the absence of *express authority*, an attorney has no power to compromise his client's claims. (Emphasis added.) Further, without the consent of the client, an attorney may not waive his or her client's substantial rights. *Williamson v. Magnusson*, 336 N.W.2d 353, 355 (N.D.1983) (citing *Robinson, supra*, 63 N.W.2d at 524).

■ At first blush, Section 27–13–02(2) of the North Dakota Century Code may appear to authorize an attorney to bind his or her client to their settlement agreements. This section provides in pertinent part that an attorney and counselor at law may "[b]ind his client to any agreement in respect to any proceeding within the scope of his proper duties and powers, ... " However, in *Gasior v. Wentz*, 89 N.W.2d 886, 889 (N.D.1958), we construed this section to mean that under his or her general authority, an attorney has "control of the remedy

applicable to the action in which he appears for his client, and may bind his client to any procedure in connection therewith where such procedure does not prejudice *any substantial right of his client.*" (Emphasis added.) Thus, Section 27–13–02(2), N.D.C.C., limits an attorney's power to bind his or her client to agreements that do not affect the client's substantive cause of action.

Our brief review of other jurisdictions indicates similar law. In *Szabo v. City of New York*, 127 Misc.2d 1027, 487 N.Y.S.2d 1007, 1008–1009 (Sup.1985), the Supreme Court of New York[1] stated:

> "an attorney may act only insofar as his client authorized him to do so. Except when it is manifestly clear that a client has granted her attorney the power to irrevocably bind her, or when she tacitly ratifies the agreement by her conduct, a settlement entered into by the attorney on behalf of the client without her express consent will not bind her and she may disavow it."

The Minnesota Court of Appeals recently stated that, except in an emergency, "an attorney has no authority to settle a case in the absence of his client's knowledge." *Rosenberg, supra*, 376 N.W.2d at 436 (citation omitted).

■ Likewise, the legal encyclopedias generally recognize that in the absence of an emergency, "either precedent special authorization or subsequent ratification by the client is essential before a compromise or settlement by the attorney will be binding on the client." 7 Am.Jur.2d Attorneys At Law § 156 (1980). The ordinary employment of an attorney to represent a client does not of itself give the attorney the implied or apparent authority to bind his or her client by a settlement or compromise of the cause of action or claim. In the absence of express authority, knowledge or consent, the attorney cannot bind his or her client. 7A C.J.S. Attorney & Client § 214 (1980). Finally, other secondary legal

---

**1.** We are cognizant of the fact that in New York's judicial system the Supreme Court is a trial court while the Court of Appeals is the highest appellate level court. Nevertheless, we believe that the *Szabo* trial court decision succinctly and accurately states the rule of law regarding the scope of an attorney's authority to bind his or her client to a settlement agreement.

works have pointed out that the rule is almost universal that an attorney has no implied power by virtue of his or her employment to compromise or settle his or her client's claim or cause of action. Annotation, *Authority of Attorney to Compromise Action*, 30 A.L.R.2d 944, 945 (1953). Either precedent special authority from the client or subsequent ratification by the client is essential in order to make an attorney's settlement or compromise binding on the client. 30 A.L.R.2d at 947. Without such special authority, an attorney is without authority to surrender a substantial right of his or her client.

Therefore, for the foregoing reasons, we reverse the district court's summary judgment and remand for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.