# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1567

_____

| | | |
|---|---|---|
| Sandra Barry, also known as Sandra Barry Lieberman, | * * * | |
| Plaintiff - Appellee, | * * | |
| v. | * * | |
| Charles L. Barry; Melanie G. Barry, | * * | Appeal from the United States District Court for the |
| Defendants. | * * | District of Minnesota. |
| Lawrence Swartz; Marcia Barry Swartz, | * * | |
| Defendants - Appellants, | * * | |
| Twin City Fan and Blower Company, a Minnesota corporation, | * * * | |
| Defendant. | * | |

_____

Submitted:  December 16, 1998

Filed:  April 16, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Lawrence and Marcia Swartz appeal from the district court's[1] enforcement of a settlement agreement between them and Marcia Swartz's sister, Sandra Lieberman. The Swartzes argue that a new term must be inserted into the agreement, exempting from the release any claim the Swartzes had against Marcia's brother, Charles Barry, and his wife, or that the settlement agreement should be rescinded because their attorney lacked authority to enter it. We affirm.

Lieberman, Marcia Swartz, and Charles Barry are siblings whose father gave them equal shares in a family company, Twin City Fan and Blower Co.[2] Lieberman sold her share in the company to her two siblings and their spouses for approximately $335,000 in 1983. By 1991, the Swartzes and Barrys were embroiled in litigation with each other. They settled that litigation by (1) the Swartzes selling their share in Twin City Fan to the Barrys for $15 million, and (2) the Barrys agreeing to indemnify the Swartzes for liability resulting from the Swartzes' former positions as directors, officers, employees or agents of Twin City Fan. When Lieberman learned of the disparity between the price she received for her stock and the price the Swartzes received for theirs, she sued the Swartzes and the Barrys for fraud, breach of fiduciary duty, and breach of contract. In particular, Lieberman claimed that at the time she sold her stock, the Barrys and Swartzes had provided her false financial statements showing that the company was losing money, when it was actually making money.

Lieberman settled with the Barrys and Twin City Fan and agreed to indemnify them against any contribution or indemnity claim by the Swartzes for damages Lieberman might recover from the Swartzes. Lieberman proceeded to trial against

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2]This lawsuit has already been before us twice in earlier stages. Barry v. Barry, 78 F.3d 375 (8th Cir. 1996); Barry v. Barry, 28 F.3d 848 (8th Cir. 1994).

the Swartzes, but after three days of trial, the parties entered mediation. The parties reached an agreement; counsel and Magistrate Judge Jonathan Lebedoff orally recounted and discussed the agreement on the record and agreed that the magistrate judge would have jurisdiction over any dispute arising under the agreement. However, when the Swartzes' counsel later submitted a written draft purporting to memorialize the agreement, the draft contained a clause not discussed on the settlement record, exempting from the agreement any claim the Swartzes might have against the Barrys. Because Lieberman had agreed in the Barry settlement to indemnify the Barrys if they had to indemnify the Swartzes, any indemnity the Swartzes recovered from the Barrys would ultimately come out of Lieberman's pocket.[3]

Lieberman objected to the new language and moved to enforce the agreement without the new insertion. Although the Swartzes resisted enforcement, the magistrate judge ordered enforcement of the agreement without the new language. The district court affirmed, modifying the magistrate's order only as to the rate of interest.

The Swartzes appeal, arguing that the terms of the settlement agreement stated on the record do not preclude their claim against the Barrys, and that therefore they are entitled to a clause in the written settlement saying so explicitly.

---

[3]Indeed, under Minnesota law the Swartzes could have raised this circuitry of obligation as a defense to Lieberman's claim against them. See National Hydro Systems v. M. A. Mortenson Co., 529 N.W.2d 690, 693 (Minn. 1995) ("[W]e first recognize that a finding of circuitry of obligation will defeat a plaintiff's claim as a matter of law. A circuitry of obligation is created when, by virtue of pre-existing indemnity agreements or obligations, the plaintiff is in effect obligated to indemnify the defendant for claims including the plaintiff's own claim.")

The district court has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous. Gatz v. Southwest Bank, 836 F.2d 1089, 1095 (8th Cir. 1988). In a diversity case, the settlement contract must be construed according to state law, Horton Mfg. Co . v. Tol-O-Matic, Inc., 973 F.2d 649, 651 (8th Cir. 1992), in this case the law of Minnesota. Minnesota law requires us to ascertain and give effect to the intent of the parties as expressed in the language used. Id. If the terms are ambiguous, the court must determine the intent of the parties, which is a question of fact that we review for clear error. Worthy v. McKesson Corp., 756 F.2d 1370, 1372 (8th Cir. 1985). The district court has considerable discretion in determining the procedure appropriate to a motion to compel settlement, and a hearing need be held only if there are substantial questions of fact that are not already a matter of record. Stewart v. M.D.F., Inc., 83 F.3d 247, 251 (8th Cir. 1996).

The magistrate judge and the district court relied on two aspects of the settlement record in concluding that the settlement included a release of the Swartzes' indemnification claim against the Barrys. First, the settlement record is replete with references to "global" settlement in the context of the entire family dispute. Second, the parties agreed on one and only one exception to the global release, which was Lieberman's claim for attorney's fees in a different suit pending against her mother's estate in Florida. Because the parties found it necessary to except from the release a claim against the mother's estate, which was not a party to the instant litigation, if they had intended to exempt a claim against the Barrys, one would have expected them to mention that as well. Not only were the Barrys originally parties to this litigation, but any recovery from them would ultimately be recoverable against Lieberman herself.

The record begins with the Swartzes' attorney stating the Swartzes' agreement to pay $900,000. He continued:

-4-

In consideration for those payments, there will be mutual global releases of any and all claims that either party may have ever had, could have had, from the beginning of time to today, with the exception of any claims that Sandra Lieberman has now currently pending against the estate of Frances Barry [the litigants' mother] for attorney's fees in the Florida litigation [concerning the mother's estate].

The magistrate judge and Lieberman's attorney said that the estate litigation exception needed to be more clearly delineated and the hearing went on at length to pin down the parameters of that exception, until the magistrate judge admonished counsel:

I want you to listen very carefully here. This settlement we're entering into is a global settlement, and it is putting to rest and to bed all litigation between the parties to this lawsuit.

I don't have any problem stating on the settlement record that this has been a fractious, divisive fight between siblings and in-laws over what amounts to a distribution of a family estate and the valuation of a family estate, and it has lasted for many years. I think that all the attorneys who have differed on many issues can acknowledge that it has been acrimonious.

I quickly say that the attorneys have been gracious and professional while still being adversarial. But this has been a difficult, angry lawsuit. The intention of all the parties is to put it to bed and that this is the end of the lawsuit.

There is an exception, a single exception, to that. That is the Florida litigation heretofore described. And this settlement has no impact on that. And I think that that should be the clear understanding of the settlement. Do you understand that?

All other litigation will be globally settled. We discussed this. That Florida litigation will be resolved for one party or the other against the estate or whoever, but nothing in this settlement is going to impact on that. Do we understand that?

        With that understanding, is this acceptable to you?
[Swartzes' counsel]: Yes.

Relying on the use of the word "global" and the oft-expressed idea that this settlement would end the family litigation with the one exception of the Florida attorney's fees motion, the magistrate judge found: "If the indemnification issue truly was to be an exception to the global nature of the settlement, it should have been raised during the settlement proceedings. [Lieberman] is not trying to add a term to the settlement; she is refusing to allow [the Swartzes] an exception beyond that exception stated at the settlement conference." In the context of the settlement record the parties made, the court found the Swartzes' argument "disingenuous."

The Swartzes argue their counsel's statements on the record cannot be taken to mean that they released their indemnity claim, because the settlement discussions referred to the "parties," which can only mean present parties to this litigation, not the Barrys, who settled earlier. To the contrary, the use of the word "parties" must be taken together with the many references to a "global" settlement of the family litigation. The Swartzes' attorney obviously thought so, or he would not have found it necessary to except Lieberman's claim against her mother's estate, which was never a party to this litigation. Moreover, the Swartzes' failure to mention, in stating the terms of the settlement agreement, that they intended to reserve a claim that would cause Lieberman to have to repay every dollar received in the settlement is strong evidence that such a reservation was not contemplated as part of the settlement. See Wray v. Clarke, 151 F.3d 807, 809 (8th Cir. 1998) (party who fails to mention attorneys' fees issue in settling litigation has not reserved right to recover fees from adversary). The magistrate judge's finding as to the parties' intent was not clearly erroneous.

The Swartzes offer affidavits stating that they had no intent to relinquish their indemnity claim. The parties to a contract are bound by the objective meaning of the words they use; their private, unexpressed thoughts cannot alter the meaning of the words they uttered or actions they took. Crince v. Kulzer, 498 N.W.2d 55, 57 (Minn. Ct. App. 1993).

In the same vein, the Swartzes have filed declarations saying that Judge Lebedoff told them privately during the settlement negotiations, that "we would be well advised to settle [Lieberman's] claims to preserve our rights against Charles Barry and Twin City Fan & Blower Company . . ., which might be jeopardized in the event of an unfavorable verdict on [Lieberman's] intentional tort claims." However, Judge Lebedoff specifically stated that there was "no mention of indemnification . . . during the settlement conference."

The Swartzes also claim that their attorney was not authorized to relinquish their indemnity claim. Under Minnesota law, settlement of a client's claim is not subsumed within the ordinary agency of an attorney for his clients, so an attorney must be specially authorized to settle a claim. Schumann v. Northtown Ins. Agc'y, Inc., 452 N.W.2d 482, 484 (Minn. Ct. App. 1990). The Swartzes do not deny that their attorney generally had authority to settle the Lieberman litigation but contend that he exceeded his authority by failing to reserve the indemnification claim. By agreement of the parties, the Swartzes and Lieberman were absent from the courtroom during memorialization of the settlement agreement. The attorney represented to the court that the agreement as stated was acceptable to the Swartzes. Cf. Skalbeck v. Agristor Leasing, 384 N.W.2d 209, 213 (Minn.Ct. App. 1986) (Finding of attorney's authority based on attorney's statement: "Bob authorized me to settle this case."). Moreover, where a client has created the appearance that his attorney has authority to settle a case and the attorney exceeds his authority in some way, if the adversary relies on the settlement to its detriment, the client may be estopped to deny his attorney's authority. See Austin Farm Center, Inc. v. Austin Grain Co., 418 N.W.2d

181, 186 (Minn. Ct. App. 1988);Bergstrom v. Sears, Roebuck & Co., 532 F. Supp. 923, 933 (D. Minn. 1982) (applying federal law); see generally McGee v. Breezy Point Estates, 166 N.W.2d 81, 89 (Minn. 1969).  Here, the Swartzes sent their attorney into the courtroom to settle their case.  The Swartzes consented to remain outside the courtroom while the settlement agreement was memorialized.  Lieberman relied on the attorney's appearance of authority to settle the case, since Lieberman discontinued the trial in reliance on the settlement. The district court did not err in concluding that the Swartzes must live with the agreement entered in that courtroom.

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.