# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 24

Mark Krebsbach individually and as the
Personal Representative of the Estate of
Krystal Krebsbach as the surviving husband of
Krystal Krebsbach,          Plaintiff and Appellant

     and

ManorCare of Minot, ND, LLC
d/b/a ManorCare Health Services, and
HCR III Healthcare, LLC,          Plaintiffs

     v.

Trinity Hospitals, Inc. and
Trinity Health, Inc.,          Defendants and Appellees

### No. 20190096

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Todd L. Cresap, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Randall J. Bakke (argued) and Bradley N. Wiederholt (appeared), Bismarck, ND, for plaintiff and appellant Mark Kresbach.

Matt A. Paulson (argued) and Randall S. Hanson (appeared), Grand Forks, ND, for defendants and appellees.

# Krebsbach, et al. v. Trinity Hospitals, Inc.
## No. 20190096

**Crothers, Justice.**

[¶1] Mark Krebsbach appeals a district court judgment dismissing his lawsuit against Trinity Hospital relating to medical services provided to his wife. The court dismissed Krebsbach's action after a special master appointed by the court concluded the two-year statute of limitations for medical malpractice applied to Krebsbach's action. The special master also concluded the action was barred because Krebsbach had notice of Trinity's possible negligence more than two years before bringing his lawsuit. We affirm.

I

[¶2] Krebsbach's wife, Krystal, died in June 2016. In September 2013 she was diagnosed with hepatitis C while a patient at the ManorCare nursing home in Minot. Krystal Krebsbach's diagnosis occurred during a hepatitis C outbreak in the Minot area.

[¶3] In September 2016 Krebsbach moved to intervene in a lawsuit with other plaintiffs against Trinity related to the hepatitis C outbreak. The district court granted Krebsbach's motion in December 2016. Krebsbach's complaint against Trinity alleged negligence, fraud, deceit and unlawful sales and advertising practices. Krebsbach claimed negligence and misconduct by Trinity's staff and management caused Krystal Krebsbach's hepatitis C. Krebsbach alleged Trinity engaged in actual fraud or deceit by misrepresenting the competency of its care providers and withholding information about its employees' theft or misuse of drugs (known as drug diversion) and needle reuse. Krebsbach asserted Krystal Krebsbach relied on Trinity's misrepresentations and allowed Trinity to provide her with phlebotomy services, which caused her to contract hepatitis C.

[¶4] Krebsbach's negligence claims relating to Trinity's phlebotomy services and primarily focused on a phlebotomist referred to as Employee A. Krebsbach claimed Employee A had a history of needle reuse and contributed to the

1

hepatitis C outbreak because she drew blood from all of the patients infected with the outbreak strain of hepatitis C. Krebsbach asserted Trinity's failure to properly train, supervise and discipline Employee A caused injuries and damages to him and his wife.

[¶5] Trinity moved to dismiss Krebsbach's complaint, arguing he failed to allege any facts suggesting Trinity was required to disclose to Krystal Krebsbach alleged complaints about Trinity's phlebotomy services. A special master appointed by the district court under N.D.R.Civ.P. 53 dismissed Krebsbach's fraud, deceit and unlawful sales and advertising practices claims because Krebsbach did not allege any facts requiring a duty of disclosure by Trinity.

[¶6] Trinity moved for summary judgment, seeking the dismissal of Krebsbach's negligence claims. The special master granted the motion, concluding the two-year statute of limitations for medical malpractice under N.D.C.C. § 28-01-18(3) applied to Krebsbach's negligence claims. The special master concluded Krebsbach's claims were barred because he sued more than two years after information was made available to him establishing Trinity's possible negligence. After objection by Krebsbach, the district court agreed with the special master's decisions and entered a judgment dismissing Krebsbach's lawsuit.

II

[¶7] This Court's standard of review for summary judgments is well established:

> "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most

2

favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Pennington v. Cont'l Res., Inc.*, 2019 ND 228, ¶ 6, 932 N.W.2d 897 (quoting *Horob v. Zavanna, LLC*, 2016 ND 168, ¶ 8, 883 N.W.2d 855).

[¶8] Motions for judgment on the pleadings are governed by N.D.R.Civ.P. 12(c). In reviewing a district court's dismissal of a complaint after a judgment on the pleadings under N.D.R.Civ.P. 12(c), we have said:

"[W]e recognize that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court's inquiry is directed to whether or not the allegations constitute a statement of a claim under Rule 8(a), N.D.R.Civ.P., which sets forth the requirements for pleading a claim and calls for a short and plain statement of the claim showing that the pleader is entitled to relief. The complaint is to be construed in the light most favorable to the plaintiff, and the allegations of the complaint are taken as true. The motion for dismissal of the complaint should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted."

*Nelson v. McAlester Fuel Co.*, 2017 ND 49, ¶ 20, 891 N.W.2d 126 (quoting *Kouba v. State*, 2004 ND 186, ¶ 5, 687 N.W.2d 466). We review a court's decision to grant judgment on the pleadings de novo. *Nelson*, at ¶ 20.

### III

[¶9] Krebsbach argues the special master and district court erred in concluding the two-year statute of limitations for medical malpractice applied to his negligence claims against Trinity. He also claims the special master and

3

district court wrongfully concluded he was on notice of Trinity's possible negligence more than two years before he sued Trinity.

A

[¶10] Under N.D.C.C. § 28-01-18(3), a malpractice action "must be commenced within two years after the claim for relief has accrued." This Court has defined "malpractice" as "professional negligence." *Jilek v. Berger Elec., Inc.,* 441 N.W.2d 660, 661 (N.D. 1989).

> "Malpractice is the failure of one rendering professional services to exercise the degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession, which results in injury, loss, or damage to the recipient of those services or to those entitled to rely upon them."

*Beaudoin v. S. Texas Blood & Tissue Ctr.,* 2004 ND 49, ¶ 8, 676 N.W.2d 103 (citing *Johnson v. Haugland,* 303 N.W.2d 533, 538 (N.D. 1981)).

[¶11] Krebsbach claims the six-year statute of limitations under N.D.C.C. § 28-01-16 applies to his negligence claims against Trinity. He asserts Trinity was negligent in its selection, training and supervision of Employee A. He contends Employee A's substandard phlebotomy practices and Trinity's failure to have proper drug diversion protocol caused Krystal Krebsbach's hepatitis C.

[¶12] The actual nature of a plaintiff's action determines what statute of limitations applies. *Sime v. Tvenge Assocs. Architects & Planners, P.C.,* 488 N.W.2d 606, 609 (N.D. 1992). In a malpractice action, the malpractice statute of limitations controls over statutes of limitations applicable to contract or other tort actions. *Beaudoin,* 2004 ND 49, ¶ 9, 676 N.W.2d 103. A plaintiff "cannot escape the confines of the statute of limitations for malpractice actions by simply couching the complaint in terms of ordinary negligence." *Sime,* at 609. "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of . . . science or art requiring special skills not ordinarily possessed by lay persons or whether

the conduct complained of can instead be assessed on the basis of common everyday experience." *Beaudoin*, at ¶ 9 (quoting *Sime,* at 609).

[¶13] Krebsbach's complaint alleged Trinity caused his wife to contract hepatitis C because Trinity and its staff failed to meet the applicable standards of care:

> "Trinity owes a duty to its current and former patients, including but not limited to Krystal Krebsbach, to provide medical treatment and services that meet the applicable standard of care. This duty includes the obligation to protect these patients from diseases like hepatitis C by exercising reasonable care under the circumstances, including using proper infection control procedures and preventing drug diversion, and by following all applicable laws, rules, regulations, industry standards, and professional guidelines."

Krebsbach further alleged Trinity breached its duty to his wife, and the breach caused her to contract hepatitis C.

[¶14] Krebsbach relies on *Jilek* to support his argument that the six-year statute of limitations for general negligence under N.D.C.C. § 28-01-16 should apply. In *Jilek*, 441 N.W.2d at 662-63, this Court decided whether negligence by an electrician was governed by the two-year malpractice statute of limitations or by the general six-year statute. This Court distinguished between a profession and a trade, and "conclude[d] that the malpractice statute of limitations applies to one practicing a profession, not a trade. Because an electrician practices a trade, the two-year malpractice statute of limitations does not apply." *Id.* at 663. This Court "[held] that, as a general rule, a profession is an occupation that requires a college degree in the specific field." *Id.* In stating the general rule, we recognized that "there may be professions or individual members of a profession that cannot be so neatly pigeonholed." *Id.*

[¶15] The special master concluded the two-year statute of limitations for claims involving medical malpractice applied to Krebsbach's negligence claims, explaining:

5

> "Although phlebotomists need no particular education, certification or training to perform their work in North Dakota, the Special Master finds their work must be considered in light of the context in which it is performed. Unlike an electrician, a phlebotomist's work is not a stand-alone service. A phlebotomist's blood draw is not the entirety of the service provided to the patient by the phlebotomist's employer. Blood was drawn from Krystal Krebsbach by a Trinity phlebotomist for the larger purpose of being screened or tested in a laboratory for interpretation and ultimate diagnosis by a physician or other highly-educated medical professional. It is part of a continuum of service provided by the hospital or other medical facility for the purpose of diagnosing and treating a patient's medical condition. The work of the phlebotomist cannot and should not be considered in isolation. Considered in this context, it is apparent that phlebotomy, at least in the context of this case, should not be considered a stand-alone trade, akin to an electrician, but rather an integral part of the practice of the medical profession."

The district court agreed with the special master's analysis and conclusions.

[¶16] Krebsbach contends a phlebotomist is not a member of a profession that requires advanced learning. He argues Employee A did not have a college degree or other advanced training, was not required to be licensed, received little on-the-job training and was not supervised by a professional when she performed the phlebotomy services on Krystal Krebsbach.

[¶17] Krebsbach seeks a strict application of *Jilek* as it relates to the distinction between a trade and a profession. Although this Court delineated between trades and professions, we noted that the statute of limitations for malpractice applied to the profession of medicine. *Jilek*, 441 N.W.2d at 661. This Court also recognized that "there may be professions or individual members of a profession that cannot be so neatly pigeonholed." *Id*. at 663.

[¶18] This Court has not limited medical malpractice actions exclusively to physicians with advanced learning. *See Greenwood v. Paracelsus Health Care Corp. of N.D., Inc.*, 2001 ND 28, ¶¶ 21-22, 622 N.W.2d 195 (plaintiff's failure to establish the standard of care for a scrub nurse employed by defendant

6

hospital justified judgment as a matter of law against plaintiff in action against the hospital); *Zettel v. Licht*, 518 N.W.2d 214, 215-16 (N.D. 1994) (two-year malpractice statute of limitations barred plaintiff's action against a medical technician and his employer clinic); *Beaudoin*, 2004 ND 49, ¶¶ 2, 8-10, 676 N.W.2d 103 (malpractice statute of limitations governed action against company that harvested, preserved and delivered body parts from cadavers for use in surgeries).

[¶19] Here, the actual nature of Krebsbach's action is Trinity's negligent provision of medical services to his wife. As the special master concluded, the question of whether Krystal Krebsbach contracted hepatitis C due to Trinity's alleged substandard phlebotomy services and failure to have proper drug diversion protocol involves "science or art requiring special skills not ordinarily possessed by lay persons." *Beaudoin*, 2004 ND 49, ¶ 9, 676 N.W.2d 103. Krebsbach's negligence claims are governed by the two-year statute of limitations for malpractice under N.D.C.C. § 28-01-18(3).

B

[¶20] Krebsbach argues the special master and district court erred in concluding he was on notice of Trinity's possible negligence more than two years before commencing his action against Trinity.

[¶21] In *Zettel*, 518 N.W.2d at 215 (internal citations omitted), this Court explained that a plaintiff must bring a medical malpractice action within two years of discovering the alleged malpractice:

> "Under Section 28-01-18(3), N.D.C.C., a medical malpractice action must be commenced within two years of the discovery of the act or omission of alleged malpractice. The limitation period begins to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defendant's possible negligence. Knowledge is an objective standard which focuses upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. The plaintiff's knowledge is ordinarily a fact question which is inappropriate for summary judgment, but the issue becomes one

7

of law if the evidence is such that reasonable minds could draw but one conclusion."

[¶22] The special master concluded there was no genuine issue of material fact about when Krebsbach discovered Trinity's possible negligence. The special master concluded Krebsbach had information available to him or with reasonable diligence could have been available to him before September 21, 2014, two years before he moved to intervene in the lawsuit against Trinity.

[¶23] The special master's order discussed the information that was available or with reasonable diligence could have been available to Krebsbach before September 21, 2014. The following information noted Trinity's possible involvement in the hepatitis C outbreak before September 21, 2014:

(1) North Dakota Department of Health (NDDOH) news release dated December 27, 2013, stating "having Hepatitis C may be associated with receipt of: (1) podiatry and phlebotomy (blood draw) services through contractual agreements with Trinity Health."

(2) Minot Daily News article dated December 28, 2013, discussed the NDDOH press release.

(3) Letter dated February 28, 2014, from attorneys stating "[p]reliminary analysis suggested that the infection might have been associated with nail care services at ManorCare or blood services through Trinity Health, but further investigation has not confirmed this." The letter also stated, "The people in Minot who have been diagnosed with Hepatitis C may have substantial personal injury claims and be entitled to substantial damage awards. If you have a relative, friend or loved one who was infected with Hepatitis C we would be glad to visit with them and possibly represent them if we feel there is a viable case."

(4) Minot Daily News article dated July 2014, stating ManorCare blamed Trinity for the spread of hepatitis C.

(5) KX News article dated June 28, 2014, discussing ManorCare's suit against Trinity.

(6) Associated Press article dated July 19, 2014, discussing Trinity's denial of ManorCare's accusations against Trinity.

[¶24] Krebsbach testified in his deposition that he was aware of the NDDOH investigation, but he did not read the report. He testified his brother used to work at the Minot Daily News and informed him of the newspaper articles. He testified he was aware people were organizing a class action lawsuit in the spring of 2014, but he did not get involved. He testified that he received communications from attorneys but he decided to focus on his wife's health instead of getting involved in a lawsuit.

[¶25] After reviewing the information available, or with reasonable diligence could have been available to Krebsbach before September 21, 2014, we agree with the special master's conclusion that Krebsbach's negligence claims were barred by the statute of limitations. Specifically, after receiving the letter from the attorneys about a possible personal injury claim, Krebsbach reasonably should have recognized the need to investigate Trinity's possible negligence. The two-year malpractice statute of limitations expired before Krebsbach moved to intervene on September 21, 2016.

IV

[¶26] Krebsbach asserts the special master and district court erred in dismissing his claims of fraud, deceit and unlawful sales and advertising practices against Trinity.

A

[¶27] Krystal Krebsbach did not have a contractual relationship with Trinity; therefore, Krebsbach's claims against Trinity are for the tort of deceit. *See Bakke v. Magi-Touch Carpet One Floor & Home, Inc.*, 2018 ND 273, ¶¶ 19-20, 920 N.W.2d 726. Under N.D.C.C. § 9-10-02, a deceit is defined as:

9

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
4. A promise made without any intention of performing."

"One who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers." N.D.C.C. § 9-10-03.

[¶28] Krebsbach's complaint alleged Trinity suppressed information about Employee A's substandard phlebotomy practices and drug diversion occurring at Trinity. He alleged Trinity's suppression of information induced him and his wife to accept phlebotomy services from Trinity and caused damages.

[¶29] Krebsbach's complaint fails to allege facts establishing Trinity had a duty to disclose the information about Employee A or drug diversion. In addition, he does not allege representations made by Trinity or inquiries made by the Krebsbachs that could give rise to a duty to disclose. The special master did not err in dismissing Krebsbach's deceit claim against Trinity under N.D.R.Civ.P. 12(c).

B

[¶30] The Unlawful Sales or Advertising Practices Act prohibits "any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D.C.C. § 51-15-02. Under the Act, "[s]ale means any charitable solicitation or any sale, offer for sale, or attempt to sell any merchandise [including services] for any consideration." N.D.C.C. § 51-15-01(5). Alleged misrepresentations or omissions not "made in connection with the sale or advertisement of any merchandise" are not actionable under the Act. *Thimjon Farms P'ship v. First Int'l Bank & Trust*, 2013 ND 160, ¶ 26, 837 N.W.2d 327.

10

[¶31] Krebsbach's complaint fails to allege any misrepresentations by Trinity in connection with the phlebotomy services performed on Krystal Krebsbach. The special master properly dismissed Krebsbach's claim.

V

[¶32] Krebsbach's remaining arguments are either unnecessary to our decision or without merit. The judgment is affirmed.

[¶33] Daniel J. Crothers
Allan Schmalenberger, S.J.
Gerald W. VandeWalle
Lisa Fair McEvers
Jon J. Jensen, C.J.

[¶34] The Honorable Allan Schmalenberger, S.J., sitting in place of Tufte, J., disqualified.