# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 56

Jason Ryberg, individually and as heir
at law for Heather Ryberg, deceased,                    Plaintiff and Appellant

     and

Nodak Insurance Company,                    Interested Party and Appellant

     v.

Darren J. Landsiedel,                    Defendant and Appellee

## No. 20200189

Appeal from the District Court of Burleigh County, South Central Judicial
District, the Honorable Bruce A. Romanick, Judge.

ORDER VACATED AND REVERSED.

Opinion of the Court by Crothers, Justice.

Scott K. Porsborg (argued) and Austin T. Lafferty (appeared), Bismarck, ND,
for plaintiff and appellants.

Lawrence E. King (argued) and Alyssa L. Lovas (appeared), Bismarck, ND, for
defendant and appellee.

**Crothers, Justice.**

[¶1]   Jason Ryberg appeals from a judgment dismissing his action with prejudice after the district court granted the defendant Darren Landsiedel's motion to enforce a settlement agreement. Nodak Insurance Company ("Nodak") appeals the court's order denying its motion to intervene in the case. Because no evidence establishes the terms by which the parties intended to settle Ryberg's action, the district court erred in granting Landsiedel's motion seeking to enforce a settlement agreement. We vacate the order denying intervention and reverse the judgment of dismissal.

I

[¶2]   In November 2016, Ryberg's wife, Heather Ryberg, was killed when Landsiedel's vehicle hit her on a rural Burleigh County highway in the early morning hours. In March 2018, Ryberg sued Landsiedel for the wrongful death of his wife.

[¶3]   Landsiedel was insured by Allstate Insurance Company and had liability policy limits of $25,000. Ryberg was insured by Nodak, with "substantial" underinsured motorist ("UIM") limits. Allstate offered Ryberg policy limits to settle his wrongful death claim. Ryberg notified Nodak of Allstate's offer of the policy limits for "full and final settlement" of the wrongful death claim. Nodak agreed to advance payment of $25,000 to Ryberg to maintain its reimbursement or subrogation rights under N.D.C.C. § 26.1-40-15.5. According to a letter from Nodak to Allstate, Nodak's draft was issued to Ryberg on March 13, 2018.

[¶4]   On January 14, 2020, a week before the scheduled trial on Ryberg's wrongful death action against Landsiedel, Nodak and Ryberg agreed to settle Ryberg's UIM claim for $100,000, in addition to the $25,000 Nodak already paid under the statute. After being notified, Landsiedel's counsel filed a notice of settlement with the district court, and the case was taken off the calendar.

Because no closing documents were filed, the court set a status conference for February 27, 2020.

[¶5] On the day of the status conference, Nodak moved to intervene in the action, seeking to preserve its right of reimbursement or subrogation. Landsiedel filed a substitution of counsel, moved for an extension of time, and subsequently opposed the motion to intervene. The court denied Nodak's motion to intervene, finding it was untimely.

[¶6] In June 2020, Landsiedel filed a motion to enforce a settlement agreement. Ryberg opposed the motion and requested oral argument. The district court granted Landsiedel's motion. Judgment was entered dismissing the case with prejudice.

II

[¶7] This case tangentially involves Ryberg's settlement of his UIM claim against Nodak. UIM insurance is a first-party coverage and governed by statute in North Dakota. *See Gillespie v. Nat'l Farmers Union Prop. & Cas. Co.*, 2016 ND 193, ¶ 8, 885 N.W.2d 771; *Hasper v. Ctr. Mut. Ins. Co.*, 2006 ND 220, ¶ 7, 723 N.W.2d 409.

[¶8] Under North Dakota law, UIM coverage must pay "compensatory damages which *an insured is legally entitled to collect* for bodily injury, sickness, disease, including death resulting therefrom, of such insured, from the owner or operator of an underinsured motor vehicle arising out of the ownership, maintenance, or use of such underinsured motor vehicle." N.D.C.C. § 26.1-40-15.3(1) (emphasis added). The insured has the initial burden to establish liability. *See Gillespie*, 2016 ND 193, ¶ 12. Under N.D.C.C. § 26.1-40-15.1(2), an "[u]nderinsured motor vehicle" is defined as:

> "a motor vehicle for which there is a bodily injury liability
> insurance policy, or bond providing equivalent liability protection,
> in effect at the time of the accident, but the applicable limit of
> bodily injury liability of such policy or bond:

> a. Is less than the applicable limit for underinsured motorist coverage under the insured's policy; or
>
> b. Has been reduced by payments to other persons injured in the accident to an amount less than the limit for underinsured motorist coverage under the insured's policy."

[¶9] In *DeCoteau v. Nodak Mutual Insurance Company* this Court discussed when UIM coverage is triggered and a UIM insurer's maximum liability:

> "To trigger underinsured coverage under the current statutory provisions for underinsured motorist coverage, a tortfeasor's motor vehicle must meet the statutory definition of underinsured motor vehicle in N.D.C.C. § 26.1-40-15.1(2). If that threshold definition is not satisfied, an insured is not entitled to underinsured proceeds under our statutory scheme. If the threshold definition of underinsured vehicle is satisfied, however, the insurer's maximum liability under N.D.C.C. § 26.1-40-15.3(2) is the lowest of (1) the compensatory damages established but not recovered [by any agreement, settlement, or judgment] from the tortfeasor, or (2) the insured's liability limits for underinsured coverage. *See Score*[ *v. Am. Fam. Mut. Ins. Co.*, 538 N.W.2d 206, 209 n.2 (N.D. 1995)] (stating current statutory provisions appear to require excess coverage if the tortfeasor's vehicle is underinsured). The language of N.D.C.C. § 26.1-40-15.4(1) allows insurers to reduce damages paid to the insured for underinsured coverage only for amounts paid or payable under workers compensation law and under the insured's first-party motor vehicle coverage."

2001 ND 281, ¶ 16, 603 N.W.2d 906.

[¶10] A UIM insured who desires to settle with the underinsured tortfeasor is required to give written notice of the proposed settlement to the UIM insurer; coverage may be excluded if the insured fails to give notice. *Hasper*, 2006 ND 220, ¶ 7; *see also* N.D.C.C. § 26.1-40-15.6(7). "Upon receipt of notice of a proposed settlement, the UIM insurer must substitute its own funds for the proposed settlement to preserve its subrogation rights against the underinsured tortfeasor." *Hasper*, at ¶ 7. Regarding reimbursement and subrogation, N.D.C.C. § 26.1-40-15.5 provides, in relevant part:

"1. In the event of payment under uninsured or underinsured motorist coverage, the insurer making payment to the extent of the payment is entitled to *the proceeds of any agreement, settlement, or judgment* resulting from the exercise of any rights of recovery of such insured for compensatory damages or be entitled to exercise a right of subrogation against any person or organization legally responsible for the bodily injury, sickness, disease, or death for which such payment is made.

2. No insurer providing underinsured motorist coverage has a right of subrogation against an underinsured motorist if the insurer has been provided with a written notice in advance of *an agreement, settlement, or judgment* between its insured and the underinsured motorist, and the insurer fails to advance a payment to the insured in an amount equal to the tentative agreement or settlement within thirty days following receipt of such notice. An insurer advancing such payment has full rights of subrogation."

(Emphasis added.) In *Hasper*, at ¶ 9, this Court further discussed this procedure under the policy in that case and North Dakota law:

"[T]he insured should promptly notify the UIM carrier if a tentative settlement has been reached with the tortfeasor and the tortfeasor's insurer. The UIM insurer then has thirty days to investigate and determine whether there is a reasonable possibility of collecting more than the policy limits from the underinsured tortfeasor. The insurer then may decide whether to substitute its check in an amount equal to the proposed settlement to its insured and preserve its subrogation rights."

[¶11] The issues in this case have arisen because Landsiedel's ultimate liability has not been finally determined but Ryberg's action against Landsiedel has been dismissed. Although the district court granted Landsiedel's motion to enforce a "settlement agreement," the terms of the parties' agreement have not been established. The parties dispute on appeal whether the case was settled.

4

# III

[¶12] Ryberg and Nodak argue the district court erred in granting Landsiedel's motion seeking to enforce an alleged settlement agreement.

[¶13] "A settlement agreement is a contract between parties, and thus contract law applies." *Lund v. Swanson*, 2021 ND 38, ¶ 9; *see also Kuperus v. Willson*, 2006 ND 12, ¶ 11, 709 N.W.2d 726. "In North Dakota, the law looks with favor upon compromise and settlement of controversies between parties, and where the settlement is fairly entered into, it should be considered as disposing of all disputed matters which were contemplated by the parties at the time of the settlement." *Kuperus*, at ¶ 10 (quoting *Vandal v. Peavey Co.*, 523 N.W.2d 266, 268 (N.D. 1994)); *see also Thomas C. Roel Assoc., Inc. v. Henrikson*, 295 N.W.2d 136, 137 (N.D. 1980). "When a settlement is fairly made before trial, it 'takes on the character of a contract between the parties and is final and conclusive, and based on good consideration.'" *Kuperus*, at ¶ 10 (quoting *Bohlman v. Big River Oil Co.*, 124 N.W.2d 835, 837 (N.D. 1963)). "A settlement will not be set aside absent a showing of fraud, duress, undue influence, or any other grounds for rescinding a contract." *Id.* (citing *Bohlman*, at 837-39).

[¶14] This Court has recognized that an attorney may not compromise a client's claims in the absence of express authority and that an attorney may not waive a client's substantial rights without the client's consent. *Midwest Fed. Savings Bank v. Dickinson Econo-Storage*, 450 N.W.2d 418, 421 (N.D. 1990). Whether an attorney has been given express authority to settle a claim normally presents a question of fact. *Id.* at 420.

[¶15] In *Tarver v. Tarver* this Court explained that the existence of an oral contract and the extent of its terms present questions of fact:

> "Courts will not enforce a contract which is vague, indefinite, or uncertain, nor will they make a new contract for the parties. An oral contract can be enforced only when the parties have agreed on its essential terms. An agreement which is so uncertain and incomplete as to any of its essential terms that it cannot be carried into effect without new and additional stipulations between the

5

parties is not enforceable. Indefiniteness as to any *essential element* of the agreement may prevent the creation of an enforceable contract. An agreement to agree in the future which is not sufficiently definite to enable a court to give it an exact meaning is not an enforceable obligation."

2019 ND 189, ¶ 9, 931 N.W.2d 187 (citations and quotations omitted).

[¶16] Ryberg and Nodak argue Ryberg has raised legitimate questions regarding the "existence and legitimacy of the alleged settlement agreement." They assert Landsiedel has not provided the district court or this Court with a copy of the settlement agreement and relies only on the assertions of Landsiedel's counsel. Ryberg maintains he did not sign or agree to settlement and requests Landsiedel to produce the agreement as clear, convincing, and satisfactory evidence of its existence. Moreover, they argue the court violated N.D.R.Ct. 3.2(a)(3) when it decided Landsiedel's motion to enforce without giving them an opportunity for a hearing, despite their request.

[¶17] Landsiedel argues the district court correctly granted his motion to enforce a settlement agreement. He rejects the appellants' claim that only Ryberg and Nodak entered into a settlement relating to Ryberg's UIM claim against Nodak, resulting in the January 2020 Notice of Settlement. Landsiedel asserts there is no UIM claim in the underlying action and both Nodak's representative and Ryberg's former counsel "confirmed a full settlement." He asserts none of Ryberg's former attorneys objected to the notice of settlement or offered some sort of clarification with the court. He also argues N.D.R.Ct. 3.2(a)(3) was not violated because Ryberg did not contact the calendar clerk to schedule a hearing nor was a notice of hearing served on all parties.

[¶18] Here, the district court order granting Landsiedel's motion to enforce a settlement agreement is conclusory. In dismissing with prejudice, the order merely states the "terms of the settlement agreement entered into by the parties are to be enforced in their entirety." While Landsiedel's attorney filed a notice of settlement indicating Ryberg's action against Landsiedel had been settled and the scheduled trial was canceled, no written settlement agreement between the parties was filed with Landsiedel's motion to enforce the

6

agreement. Further, in granting the motion to enforce a settlement agreement, the court did not hold a hearing, made no findings of fact as to the terms of the settlement, and no evidence appears in the record as to the agreement's terms.

[¶19] Because no evidence establishes the terms by which the parties intended to settle Ryberg's action, the district court erred in granting Landsiedel's motion seeking to enforce a settlement agreement. We reverse the judgment dismissing the action.

IV

[¶20] Ryberg and Nodak argue the district court erred in denying Nodak's motion to intervene as plaintiff in this matter.

[¶21] Whether a party may intervene as a matter of right under N.D.R.Civ.P. 24(a) presents a question of law, fully reviewable on appeal. *Pub. Serv. Comm'n v. Grand Forks Bean Co., Inc.*, 2017 ND 201, ¶ 15, 900 N.W.2d 255; *Fisher v. Fisher*, 546 N.W.2d 354, 355 (N.D. 1996). In considering a party's motion to intervene under N.D.R.Civ.P. 24(a), this Court reviews the district court's findings of fact under the clearly erroneous standard of review in N.D.R.Civ.P. 52(a). *Grand Forks Bean*, at ¶ 15. A court's decision on permissive intervention under N.D.R.Civ.P. 24(b) is reviewed for an abuse of discretion. *Grand Forks Bean,* at ¶ 16. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Id.*

[¶22] Here, the district court denied Nodak's motion to intervene, essentially concluding that it was untimely. Nodak and Ryberg argue, however, that Nodak had protected its rights under N.D.C.C. § 26.1-40-15.5 and the court's denial of its motion to intervene and dismissal with prejudice extinguished its statutory right to subrogation. They argue the court's order has placed Nodak in an "impossible position" because the order suggests Nodak had an obligation to intervene before the underlying case settled and before any UIM benefits were paid. Nodak asserts this result would inject the insurer into the

7

underlying litigation between its insured and the tortfeasor and inject the existence of insurance into the underlying lawsuit.

[¶23] Nodak and Ryberg further argue the district court's order denies Nodak's statutory right to recovery, the court ignored the "unique circumstances" of this case, and the finding that Nodak should have intervened earlier in the case was clearly erroneous. They contend Landsiedel was not prejudiced by Nodak's decision to wait to intervene until after settling the UIM claim. They assert the district court failed to make findings of fact on the requirements of N.D.R.Civ.P. 24(a)(1) and (2), Nodak is entitled to intervention of right under N.D.R.Civ.P. 24, and, at the very least, the court abused its discretion in denying permissive intervention under N.D.R.Civ.P. 24(b).

[¶24] Landsiedel responds that Nodak placed itself in an "impossible position" because Nodak did not need to intervene in the tort action to protect its interests. He asserts Nodak had two "theoretical alternatives": (1) file a separate lawsuit against Landsiedel; or (2) allow the case to proceed to trial, pay any UIM judgment, and pursue its subrogation rights against Landsiedel. He asserts the court's order does not conflict with well-established public policy and does not deny Nodak its statutory right to recovery. Landsiedel contends he was prejudiced when the notice of settlement was filed a week before the potential trial and it took over a month following the notice for Nodak to intervene. He asserts that if Nodak was allowed to intervene, every party to the action would be impacted and prejudiced by the additional time and expense incurred.

[¶25] Because the district court erred in granting Landsiedel's motion to enforce a settlement agreement and we have reversed the judgment of dismissal, we also vacate without prejudice the court's related order denying Nodak's motion to intervene. Because of our disposition, the order is not decisive of the question involved, nor does it prejudice Nodak's right to raise the question at a subsequent stage of proceedings, if necessary.

## V

[¶26] The remaining issues raised by the parties are unnecessary to resolve the disposition of this case. We vacate the order denying intervention and reverse the judgment of dismissal.

[¶27] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte