FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 9, 2021
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 216

Leland Swanson,                                                     Plaintiff and Appellant

    v.

Mark E. Larson and

Mark E. Larson, CPA, PLLC,                               Defendants and Appellees

## No. 20210125

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Susan L. Bailey, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Ryan James (argued), Pittsburgh, PA, and Barton J. Cahill (appeared), Moorhead, MN, for plaintiff and appellant.

Michael T. Andrews, Fargo, ND, for defendants and appellees.

**Crothers, Justice.**

[¶1] Leland Swanson appeals from a judgment dismissing his breach of contract and professional negligence claims against Mark Larson and Mark Larson, CPA, PLLC. Swanson argues the district court prematurely and improperly granted summary judgment in Larson's favor. We affirm.

I

[¶2] In 2017, Swanson hired Larson to provide a forensic accounting of various entities owned by Swanson. Larson provided the accounting services in anticipation of litigation against Swanson's former business partner. The engagement agreement stated Larson was retained as a consulting expert and would provide expert witness testimony upon request.

[¶3] During discovery in subsequent litigation against Swanson's former business partner, Larson was identified as an expert witness in a July 2018 response to interrogatories. Larson ended his engagement in January 2019 by providing written notice to Swanson's attorney. After Larson's termination, Swanson retained another expert to testify in the pending litigation.

[¶4] In January 2020, Swanson sued Larson for breach of contract and professional negligence. Swanson alleged Larson breached their agreement and committed professional negligence by terminating his services and refusing to testify as an expert witness in the litigation against Swanson's former business partner.

[¶5] Larson moved for summary judgment, arguing the agreement did not require him to testify at trial. He also argued the agreement was terminable at will by either party, and he did not breach the agreement by terminating his services. Swanson resisted the motion and requested more time for discovery.

[¶6] In December 2020, the district court denied Swanson's request for additional discovery and granted Larson's summary judgment motion,

concluding the agreement only required Larson to provide consulting services for Swanson. The court concluded Larson did not breach the agreement by terminating his services in January 2019 because the agreement did not have a fixed term or expiration date. The court also concluded Swanson's professional negligence claim against Larson failed. The court entered judgment dismissing Swanson's lawsuit.

## II

[¶7] This Court's standard of review for summary judgments is well established:

> "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Dwyer v. Sell*, 2021 ND 139, ¶ 6, 963 N.W.2d 292 (quoting *Krebsbach v. Trinity Hosps., Inc.*, 2020 ND 24, ¶ 7, 938 N.W.2d 133).

[¶8] "A party's request for additional time for discovery under N.D.R.Civ.P. 56(f) is within the district court's sound discretion." *PLS Servs., LLC v. Valueplus Consulting, LLC*, 2021 ND 99, ¶ 22, 960 N.W.2d 780. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or its decision is not the

2

product of a rational mental process leading to a reasoned determination. *Ryberg v. Landsiedel*, 2021 ND 56, ¶ 21, 956 N.W.2d 749.

## III

[¶9] Swanson argues the district court prematurely granted summary judgment. In its December 2020 order, the court addressed Swanson's N.D.R.Civ.P. 56(f) request for additional discovery:

> "This action commenced on January 28, 2020. The parties have had ample time to conduct discovery. James' affidavit asserts that Swanson would request information from Larson on the scope of the Engagement Agreement, facts regarding the termination of the Engagement Agreement, and facts regarding Larson's fees. In short: James has failed to adequately explain the specific information sought, how the information would have precluded summary judgment, or why the information had not been previously obtained. In any event, because the Engagement Agreement is not ambiguous, its interpretation is limited to its four corners, and extrinsic/parole [sic] evidence is inadmissible to alter, change, or explain the contract contrary to its plain terms.
>
> "The Court declines to order additional time for discovery before deciding the motion for summary judgment. Swanson cannot establish a claim for breach of contract under the plain, unambiguous terms of the Engagement Agreement."

[¶10] On appeal, Swanson does not address how the district court abused its discretion by denying Swanson's request for additional discovery. As the court explained, Swanson failed to describe what information was sought and how it might preclude summary judgment. The court did not abuse its discretion by denying Swanson's request for additional discovery.

## IV

[¶11] Swanson argues the district court erred in its interpretation of the engagement agreement. Swanson asserts the agreement was breached by Larson terminating the agreement and refusing to testify after being disclosed as a testifying expert. Swanson also contends the agreement was effective for

the duration of the litigation, and Larson breached the agreement by terminating his services before the litigation concluded.

A

[¶12] Chapter 9-07, N.D.C.C., governs the interpretation of contracts. The parties' intent is ascertained from the writing alone if possible. N.D.C.C. § 9-07-04. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. "Matters of contractual interpretation present questions of law that are fully reviewable on appeal." *Bismarck Fin. Grp., LLC v. Caldwell*, 2020 ND 207, ¶ 9, 950 N.W.2d 155.

[¶13] The engagement agreement provides:

> "You have requested, as a consulting expert witness in anticipation of litigation, me to conduct a forensic examination of various entities owned by Lee Swanson involving examination of Mr. Swanson's various companies' books & records, including financial statements and income returns for the purposes of determining and communicating the result of my examination and my opinions with respect to the economic damages in the related litigation. As requested I am also available to provide expert witness testimony but understand I will commence this engagement as a consulting expert and be available for testimony if so requested.

> "The engagement objective is to perform as a 'finder [of] facts' and express various opinions for the 'trier of facts.'"

[¶14] The district court concluded Larson did not breach the agreement by terminating his services in January 2019 and refusing to provide opinion testimony:

> "Larson was only obligated to provide consulting services, that is, conduct a forensic examination and communicate the results of that examination, under the terms of the Engagement Agreement. Larson could also possibly testify for Swanson, but only at Swanson's later request. The only reasonable interpretation of the Engagement Agreement between Swanson and Larson was for

4

consulting services of an indefinite duration, and the Engagement Agreement was terminable at will, by either party, as a matter of law. The Engagement Agreement is unambiguous, and extrinsic or parole [sic] evidence is not admissible to alter, vary, explain or change the contract."

[¶15] The engagement agreement required Swanson to request Larson to testify as an expert. The record does not show Swanson specifically requested Larson to testify. However, in a July 2018 response to interrogatories, Swanson named Larson as an "expert witness you have consulted or retained in relation to this action." Swanson's response to interrogatories also mentioned Larson's attached affidavit "which describes with specificity the facts and opinions to which he will testify." Larson's April 2018 affidavit offers his preliminary opinions, but does not mention testifying at trial.

[¶16] Viewing the evidence in a light most favorable to Swanson, the disclosure of Larson as an expert witness and Larson's affidavit may raise a genuine issue of material fact as to whether Swanson requested Larson to testify under the engagement agreement. However, even assuming there was a request to testify, Larson did not breach the agreement by terminating his accounting services in January 2019 because the agreement was terminable at will by either party.

B

[¶17] Swanson claims the engagement agreement had a definite duration. He argues the agreement remained effective for the duration of the litigation, and Larson's termination before the litigation concluded was a material breach of the agreement. Swanson asserts the agreement specified that Larson could terminate only on Swanson's failure to meet his payment obligations.

[¶18] "This court has held that where parties enter into an agreement by the terms of which one party is to perform services for the other, and the contract neither expressly nor impliedly fixes the time of its duration, it may be terminated by either party by the giving of notice to the other." *N. Am. Pump Corp. v. Clay Equip. Corp.*, 199 N.W.2d 888, 894 (N.D. 1972) (citing *Myra Found. v. Harvey*, 100 N.W.2d 435, 437 (N.D. 1959)). In this state, the "general

5

rule establishes that [an] [a]greement's silence as to its duration is, without more, an unambiguous declaration that it is terminable at will by either party." *Olander v. State Farm Mut. Auto. Ins. Co.*, 317 F.3d 807, 810-11 (8th Cir. 2003).

[¶19] The district court concluded "[t]he Engagement Agreement does not fix a date or set a duration on which it will terminate." The court concluded that under the plain language of the agreement, "Larson only agreed to conduct a forensic examination of various entities . . . for the purposes of determining and communicating the result of my examination and my opinions with respect to the economic damages in the related litigation." The court further concluded:

> "At most, one could imply a term for so long as it took Larson to complete the defined object of the Engagement Agreement, that is, so long as it took Larson to conduct a forensic examination and communicate the result of his examination and opinions. Larson did complete the forensic examination and communicated the results and his opinions to Swanson prior to terminating the Engagement Agreement. Any implied term was met."

[¶20] We agree with the district court. While the engagement agreement allows Larson to terminate for "delinquent payment," the agreement does not "expressly . . . [fix] the time of its duration." *N. Am. Pump Corp.*, 199 N.W.2d at 894. The agreement states Larson was retained "in anticipation of litigation," but it does not specify Larson was retained for the duration of the litigation. The agreement cannot be interpreted to say Larson was employed for the entirety of the litigation. Nor could the agreement be read to require Swanson to use Larson for the duration of the litigation if Larson's opinions would have been unfavorable or unhelpful to Swanson. The court did not err in concluding Swanson failed to establish a breach of contract claim under the plain language of the engagement agreement.

## V

[¶21] Swanson claims Larson committed professional negligence by failing to render expert witness services under the proper standard of care.

[¶22] Professional negligence, or malpractice, is:

"[T]he failure of one rendering professional services to exercise the degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession, which results in injury, loss, or damage to the recipient of those services or to those entitled to rely upon them."

*Krebsbach*, 2020 ND 24, ¶ 10. To establish a professional negligence claim, a plaintiff must show the professional has a duty to protect another from injury, a breach of the duty and a resulting injury proximately caused by the breach of duty. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.*, 419 N.W.2d 920, 921-22 (N.D. 1988).

[¶23] The district court dismissed Swanson's professional negligence claim, concluding Swanson's complaint did not allege Larson breached a duty by providing substandard forensic accounting services that caused Swanson to suffer damages. The court concluded Larson's termination of the engagement agreement was "not conduct sufficient to make out a claim of professional negligence as a matter of law."

[¶24] A breach of contract does not, by itself, provide a basis for a negligence action. *Dakota Grain Co., Inc. v. Ehrmantrout*, 502 N.W.2d 234, 236 (N.D. 1993). Conduct constituting a breach of contract does not subject the defendant to an action in tort for negligence, unless the defendant's conduct also establishes a breach of an independent duty that does not arise from the contract. *Id.* at 236-37; *see also D & A Dev. Co. v. Butler*, 357 N.W.2d 156, 158 (Minn. Ct. App. 1984) (to prevail on a negligence claim, a plaintiff must prove as one element the defendant breached a duty imposed by law, not merely one imposed by contract).

[¶25] Swanson's complaint alleged Larson committed professional negligence by:

"(a) unilaterally terminating the Engagement Agreement and abandoning Swanson; (b) refusing to provide further litigation support services to Swanson; (c) refusing to either meet or further communicate with Swanson and/or his counsel regarding the

7

further provision of litigation support services and the Litigation; and (d) refusing to complete performance of the agreed upon litigation support services, including, without limitation, by testifying at trial in the Litigation."

[¶26] Swanson's allegations against Larson arise from the duties imposed by the engagement agreement. As the district court concluded, Swanson did not claim Larson breached an independent professional duty imposed by law by providing substandard forensic accounting services. The district court properly dismissed Swanson's professional negligence claim against Larson.

## VI

[¶27] Swanson's remaining arguments are not necessary to our decision or are without merit. The judgment is affirmed.

[¶28] Daniel J. Crothers, Acting C.J.
Gerald W. VandeWalle
Lisa Fair McEvers
Jerod E. Tufte
William A. Neumann, S.J.

[¶29] The Honorable William A. Neumann, S.J., sitting in place of Jensen, C.J., disqualified.