# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 184

William McMahon,                                    Plaintiff and Appellant

    v.

Sanford, Sanford Health, and
Shannon Mulinex,                                    Defendants and Appellees

### No. 20250100

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Stephannie N. Stiel, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

William McMahon, self-represented, Fargo, N.D., plaintiff and appellant; submitted on brief.

Peter W. Zuger, Ana A. Neir, and Ronald H. McLean, Fargo, N.D., for defendants and appellees Sanford and Sanford Health; submitted on brief.

Mark A. Solheim, St. Paul, Minnesota, for defendant and appellee Shannon Mulinex; submitted on brief.

**Tufte, Justice.**

[¶1]   William McMahon appeals from an amended judgment dismissing his complaint. McMahon argues the district court erred in granting summary judgment to the Defendants by denying his oral motion for continuance of the summary judgment hearing, failing to allow for additional time to conduct discovery, requiring an expert affidavit, and concluding he failed to meet the extreme and outrageous conduct threshold for his intentional infliction of emotional distress ("IIED") claims. We affirm the amended judgment.

I

[¶2]   In March 2024, McMahon filed a complaint against Sanford and Sanford Health (together, "Sanford") and nurse Shannon Mulinex concerning "how [he] was treated while receiving medical care at Sanford medical facilities in Fargo, North Dakota, in April 2022." McMahon alleged six counts of IIED; and one count each of general negligence, defamation, discrimination, and violation of the Emergency Medical Treatment and Labor Act. McMahon alleged he suffered emotional distress because Sanford and its staff refused to provide him pain medication; verbally abused, ridiculed, and humiliated him; failed to investigate the alleged abuse; engaged in a pattern of hostile conduct; and discharged him against his wishes.

[¶3]   In September 2024, Sanford moved for summary judgment, arguing McMahon failed to serve an expert affidavit as required by N.D.C.C. § 28-01-46 within three months of commencing the action, and his IIED claims do not allege extreme and outrageous conduct. McMahon opposed the motion, and the district court held a hearing. At the hearing, McMahon moved to continue because he "may have assumed incorrectly" that the hearing was "just for th[e] proper service motion." The court denied the oral motion for continuance, noting he received multiple notices of the hearing. The court granted the summary judgment motion, dismissing all claims. In relevant part, the court concluded several of the IIED claims failed for lack of an expert affidavit, and the remaining

IIED claims did not rise to the level of extreme and outrageous conduct as a matter of law.

[¶4] The district court recognized that Mulinex had not joined the summary judgment motion and entered a supplemental order granting summary judgment to Mulinex on the claims against her for the same reasons as its previous order. The court entered an amended judgment of dismissal. McMahon appeals only the dismissal of his six IIED claims.

II

[¶5] McMahon argues the district court abused its discretion by denying his oral motion to continue the summary judgment hearing. He contends he "reasonably believed the November 6 hearing was scheduled only for his service-related motions," Sanford "fail[ed] to properly serve its reply brief until less than 48 hours before the hearing," and, proceeding pro se, he was "without adequate preparation."

[¶6] Under N.D.R.Ct. 6.1(b), "[m]otions for continuance must be promptly filed as soon as the grounds are known and will be granted only for good cause shown, either by a declaration or otherwise." A litigant is not granted leniency solely because of his pro se status and is "equally bound by applicable rules of procedure, even if he lacks understanding of those rules or the correct procedures." *Jury v. Barnes Cnty. Mun. Airport Auth.*, 2016 ND 106, ¶ 14, 881 N.W.2d 10. We review a continuance denial for an abuse of discretion. *Desert Partners IV, L.P. v. Benson*, 2019 ND 19, ¶ 10, 921 N.W.2d 444. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

[¶7] The record shows that McMahon received notices in September and October of 2024 that the summary judgment hearing would be held on November 6, 2024. The hearing was not an evidentiary hearing requiring him to present or rebut evidence, but was only oral argument on the motion, which Sanford had filed two months earlier. McMahon stipulated to November 1, 2024, as the filing deadline for Sanford's reply brief, which the district court ordered.

Although Sanford admitted it did not email its reply brief to McMahon until November 4, 2024, Sanford filed its reply brief on November 1, 2024. McMahon had approximately two days to review Sanford's six-page reply brief before oral argument. At the hearing, McMahon stated that he "may have assumed incorrectly" that the hearing was "just for th[e] proper service motion" and conceded the misunderstanding was his "fault." We conclude the court did not abuse its discretion in denying a continuance.

## III

[¶8] McMahon argues the district court erred in granting summary judgment without allowing additional time to conduct discovery. Under N.D.R.Civ.P. 56(f), if a nonmoving party "shows by declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" deny the motion or continue the proceedings. Sanford argues McMahon raises this issue for the first time on appeal. "[I]ssues not raised or considered in the district court cannot be raised for the first time on appeal, and this Court will not address [such] issues." *Moe v. State*, 2015 ND 93, ¶ 11, 862 N.W.2d 510.

[¶9] McMahon provides no citation to the record where he moved to continue the summary judgment proceedings (or deny the summary judgment motion) to allow additional time to conduct discovery. *See* N.D.R.App.P. 28(b)(7)(B)(ii). He cites only his statements from the summary judgment hearing where he said that Sanford provided "blanket denials" to his interrogatories that asked about its "forced discharge" policy. The district court then noted that McMahon did not move to compel discovery, and McMahon responded, "We had not had a chance to have a meeting on the issues of discovery. We had planned that, but rescheduled until after this hearing." At no point during this discussion did McMahon move to continue the summary judgment proceedings to allow additional time for discovery. We conclude this issue has not been preserved for appeal, and we decline to further address it.

## IV

[¶10] McMahon argues the district court erred in granting summary judgment by concluding that an expert affidavit was required and that he failed to meet

the extreme and outrageous conduct threshold for his IIED claims. Our summary judgment standard of review is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Krebsbach v. Trinity Hosps., Inc.*, 2020 ND 24, ¶ 7, 938 N.W.2d 133.

A

[¶11] McMahon argues the district court erred by requiring an expert affidavit. A professional negligence action against a physician, nurse, or hospital generally requires an expert affidavit:

> Any action for injury or death alleging professional negligence by a physician, nurse, [or] hospital . . . must be dismissed without prejudice on motion unless the plaintiff serves upon the defendant an affidavit containing an admissible expert opinion to support a prima facie case of professional negligence within three months of the commencement of the action. . . . This section does not apply to unintentional failure to remove a foreign substance from within the body of a patient, or performance of a medical procedure upon the wrong patient, organ, limb, or other part of the patient's body, or other obvious occurrence.

4

N.D.C.C. § 28-01-46. It is undisputed that McMahon did not serve an expert affidavit within three months of commencing the action. Instead, he argues the affidavit requirement does not apply because he did not allege medical negligence, which would trigger the statute.

[¶12] The district court concluded an expert affidavit was required for three of McMahon's IIED claims (Claims 1, 2, and 4). Claim 1 alleged McMahon suffered emotional distress as a result of his "forced discharge" from Sanford's Broadway hospital on April 22, 2022. McMahon alleged that Sanford discharged him for violating its policy by leaving the hospital building. McMahon was transported by ambulance to the emergency room at Sanford's 23rd Avenue South hospital. Claim 2 alleged McMahon suffered emotional distress from being refused pain medication once admitted to the emergency room at Sanford's 23rd Avenue South hospital on April 22, 2022. Claim 4 alleged McMahon suffered emotional distress from the nursing staff's refusal to replace scheduled pain medication that spilled onto the floor. He did not receive his scheduled pain medication until three hours later. McMahon argues these were non-medical administrative decisions, which do not require an expert opinion.

[¶13] "To establish a prima facie case of medical negligence, a plaintiff must produce expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of." *Ortega v. Sanford Bismarck*, 2019 ND 133, ¶ 17, 927 N.W.2d 872 (emphasis omitted). We have said that "professional negligence" and "malpractice" are synonyms, and defined malpractice as:

> the failure of one rendering professional services to exercise the degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession, which results in injury, loss, or damage to the recipient of those services or to those entitled to rely upon them.

*Krebsbach*, 2020 ND 24, ¶ 10.

[¶14] "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of . . . science or

5

art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience." *Krebsbach*, 2020 ND 24, ¶ 12; *see also Sime v. Tvenge Assocs. Architects & Planners, P.C.*, 488 N.W.2d 606, 609 (N.D. 1992) (concluding, in the statute of limitations context, that "one cannot escape the confines of the statute of limitations for malpractice actions by simply couching the complaint in terms of ordinary negligence" because "[i]t is 'the actual nature of the action'" that "is determinative"); *Votre v. Cnty. Obstetrics & Gynecology Grp., P.C.*, 966 A.2d 813, 815, 819-20 (Conn. App. Ct. 2009) (concluding trial court "properly determined" that the complaint alleging infliction of emotional distress, breach of contract, and misrepresentation "sounded in medical malpractice" because "factual allegations underlying the claims require proof of the defendants' deviation from the applicable standard of care of a health care provider").

[¶15] The district court concluded "the allegations surrounding the appropriateness of discharging someone who needed pain medication and had an IV would be medical decisions requiring an expert affidavit. Similarly, decisions to treat with pain medication and give medication would be decisions requiring medical expertise considering the entire picture of care." Generally, decisions to provide medication, refuse to provide medication, or discharge a patient are medical decisions requiring the expertise of medical professionals. *See Ferguson v. Kennestone Hosp., Inc.*, 899 S.E.2d 357, 361 (Ga. Ct. App. 2024) ("[T]he decision to employ prescription medication or medical devices involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular need and susceptibilities."); *id.* ("[A]rguments about the propriety of whether the medication should have been administered fall squarely within the realm of professional malpractice."); *Szymborski v. Spring Mountain Treatment Ctr.*, 403 P.3d 1280, 1286 (Nev. 2017) (concluding professional negligence claim concerning medical duties in discharge planning "would require medical expert testimony to assist the jury in determining the standard of care," and was "grounded in medical malpractice" and "properly dismissed for failure to attach a medical expert affidavit"). We conclude the court did not err in determining Claims 1, 2, and 4 involved medical decisions requiring an expert affidavit.

6

## B

[¶16] McMahon argues the district court erred in concluding the obvious occurrence exception to the expert affidavit requirement does not apply. Under N.D.C.C. § 28-01-46, an expert affidavit is not required for an "obvious occurrence." The obvious occurrence exception "applies only to cases that are plainly within the knowledge of a layperson." *Greene v. Matthys*, 2017 ND 107, ¶ 13, 893 N.W.2d 179. "In an 'obvious occurrence' case, expert testimony is unnecessary precisely because a layperson can find negligence without the benefit of an expert opinion." *Id.* "In order for this exception to apply, the occurrence that led to the result, not the result itself, must be obvious." *Id.* ¶ 14.

[¶17] The district court concluded "a layperson would be unable to determine negligence without the benefit of an expert opinion because a layperson generally would not be aware of the applicable standard of care or whether the providers in this case breached the standard in discharging McMahon . . . or managing his pain while in the ER." We agree. Determining whether to discharge a patient or provide pain medication requires medical expertise beyond the common understanding of a layperson. We conclude the court did not err in determining the obvious occurrence exception does not apply.

## C

[¶18] McMahon argues the district court erred in concluding he failed to meet the extreme and outrageous conduct threshold for his remaining IIED claims. In his remaining IIED claims (Claims 3, 5, and 6), McMahon alleged he suffered emotional distress as a result of Sanford and its staff verbally abusing, ridiculing, and humiliating him; failing to investigate the alleged abuse; and demonstrating a pattern of hostile conduct.

[¶19] The tort of intentional infliction of emotional distress requires "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." *Neppel v. Dev. Homes, Inc.*, 2021 ND 5, ¶ 16, 953 N.W.2d 642. "The district court must first determine if, as a matter of law, the defendant's conduct is sufficiently extreme and outrageous to permit recovery." *G.K.T. v. T.L.T.*, 2011 ND 115, ¶ 9, 798 N.W.2d 872. This standard is "strenuously

high" and requires conduct "beyond all possible bounds of decency." *Id.* ¶ 11. "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*; *see also Lucas v. Riverside Park Condos. Unit Owners Ass'n*, 2009 ND 217, ¶ 32, 776 N.W.2d 801 (concluding district court properly granted summary judgment dismissal of IIED claim alleging he was verbally and physically threatened).

[¶20] In *Muchow v. Lindblad*, this Court held a detective's conduct was not sufficiently outrageous to support IIED claim where he told the family of a deceased woman that she committed suicide without conducting a meaningful investigation and he accused family members of "questioning his determination of suicide merely to assuage their feelings of guilt for not having given [her] support and love while she was alive." 435 N.W.2d 918, 919, 924-25 (N.D. 1989); *see also Neppel*, 2021 ND 5, ¶¶ 18, 23 (concluding residential care facility's housing and supervision of sexual predator and its response to predator's rape of incapacitated housemate was not sufficiently extreme and outrageous).

[¶21] McMahon argues Sanford's staff routinely treated him poorly while he was a patient, describing numerous events in his complaint, summary judgment declaration, and briefs. After reviewing the allegations and evidence submitted in support or opposition to summary judgment, the district court concluded, "Assuming all of McMahon's allegations are true and regardless of whether the actions are viewed in isolation or in their totality, they are insufficient to establish extreme and outrageous conduct as a matter of law following the standard as established by *Muchow* and *Neppel*." After reviewing the record, we conclude the court did not err in determining the remaining (non-medical) IIED claims, individually or in their totality, do not meet the extreme and outrageous conduct threshold as a matter of law. Viewing the evidence in the light most favorable to McMahon, the conduct of Sanford and its staff amounts to, at most, insults, indignities, and annoyances, not conduct that is beyond all possible bounds of decency. To the extent McMahon's other IIED claims alleged Sanford or its staff mistreated him (outside of the medical negligence allegations), we conclude the court did not err in determining those (non-medical) allegations, individually or collectively with all IIED claims, do not meet the extreme and outrageous conduct threshold as a matter of law.

8

## V

[¶22] We have considered the parties' remaining arguments and conclude they are either unnecessary for our decision or without merit. We affirm the amended judgment.

[¶23] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr